THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KERWIN DRUMMER, Defendant-Appellant.

Third District No. 78-465

Opinion filed March 14, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of conviction for robbery entered by the circuit court of Peoria County after jury trial.

On April 5, 1978, at approximately 9:30 p.m., there was a robbery at a Go-Tane Service Station in Peoria, Illinois. Within minutes the attendant, Gary Jones, called police and described the robbers as three young black men. Jones described their clothing and said they had fled on foot.

A report of the robbery was broadcast over the police radio. Officer George Fulton, who was patrolling nearby, drove in the direction of the robbery site. Within two minutes after hearing the broadcast Fulton saw a motor vehicle with four black males in it pulling out of a parking lot less than a block from the Go-Tane station. He ordered the car to stop because the parking lot was less than a block from the robbery site, the automobile contained four black males, and the tavern across the street was considered a white tavern.

After the stop a more detailed description of the robbers was broadcast. Some of the clothing worn by the occupants of the vehicle matched the description of the robbers' clothing. All of the occupants were ordered out of the vehicle, searched, and arrested. Twenty-four dollars was found in defendant's pocket. A cap gun, other items later introduced into evidence, and rolls of coins in an oil can were found under the front seat of the vehicle. The occupants were then taken to the Go-Tane station where they were identified by Jones.

At the suppression hearing Jones testified that the robbers fled on foot in the opposite direction from the parking lot. Fulton agreed that the direction of flight may have been given on the radio, although he could not recall it. He also testified that there were no traffic violations which

justified the stop. He could not see the clothing of the occupants before the stop and a complete description was not broadcast until after the stop. Fulton also agreed that the parking lot was not exclusively reserved for whites.

In ruling that the stop was justified, the trial court stated that stopping three black males at that time of night when an armed robbery had taken place within a block of the parking lot was reasonable.

Defendant was first tried on June 14, 1978. Daniel Field appeared as his counsel. The trial took place two days after the suppression hearing and one day after a co-defendant, David Carlton (see *People v. Carlton* (1980), 81 Ill. App. 3d 738, 402 N.E.2d 310), was found guilty after a stipulated bench trial. Shortly before adjourning on the first day the trial court, noting that the defense was that Carlton was solely responsible for the robbery, sought from defendant a waiver of an apparent conflict of interest by defense counsel. Field had, one day earlier, represented Carlton at the stipulated bench trial. This was explained to defendant. There was also a discussion that Field had consistently in the instant case argued that defendant was an innocent bystander and that Carlton was the guilty party. Defendant apparently did not understand conflict of interest, but he also refused other counsel and stated that he wanted Field to represent him. The first trial was later declared a mistrial on other grounds.

On September 26, 1978, the case was retried before Robert E. Hunt. Field continued to represent defendant. There was no mention of possible conflict of interest.

Defendant was the only defense witness. He testified that he went to the Go-Tane station with Carlton and Charles Carter but he did not participate in the robbery. As soon as he realized the others planned to rob the station, he ran back to the car and asked the driver to take him home.

Defendant was found guilty and sentenced to three years in prison.

On appeal defendant raises the following issues: (1) whether the police officer unlawfully stopped the motor vehicle in which defendant was a passenger, (2) whether defendant's expression of satisfaction with his attorney was an intelligent waiver of his appointed counsel's conflict of interest.

■■ ■ Since the stopping of a motor vehicle and the detaining of its occupants is a seizure within the meaning of the Fourteenth Amendment to the United States Constitution, the standard of reasonableness determines the legality of the stop. (*Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391.) This standard requires "* * * at least articulable and reasonable suspicion * * * that either the vehicle or an occupant is otherwise subject to seizure for violation of law, * * *"

(*Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391). Nothing in the *Prouse* opinion prohibits the stopping of vehicles as long as the stops are not unreasonably intrusive on the privacy of the motorist and his passengers and do not involve the unconstrained exercise of discretion by the police officer. *Delaware v. Prouse* (1979), 440 U.S. 648 n.26, 59 L. Ed. 2d 660, 674 n.26; 99 S. Ct. 1391 n.26; ·*People v. Franks* (1970), 72 Ill. App. 3d 940.

We must, therefore, determine whether Officer Fulton had at least reasonable and articulable suspicion that defendant and the others in the vehicle had participated in the armed robbery at the Go-Tane station. Within minutes of receiving a radio transmission that the armed robbery had been committed by three black youths, Fulton saw a motor vehicle containing four black youths leave a parking lot less than a block from the robbery site. While the youths had fled the station on foot, we believe it reasonable for Fulton to assume that they had a motor vehicle and driver nearby. Fulton also observed that the tavern across the street was considered a white tavern and the patrons of the tavern usually used that parking lot. While we would not be satisfied with any individual reason given by Fulton, we believe that considering the total circumstances Fulton could reasonably infer that the crime had been committed by the occupants of the motor vehicle. See *People v. Blakes* (1977), 55 Ill. App. 3d 654, 370 N.E.2d 860; *People v. Sanford* (1976), 34 Ill. App. 3d 990, 341 N.E.2d 453.

■■ Since we find that the stop was legal, we also find that any evidence found as a result of the stop is admissible. Therefore we shall not discuss the matter of suppression or standing.

Defendant has also argued that his expression of satisfaction with his counsel was not an intelligent waiver of an apparent conflict of interest. Defendant's attorney, Daniel Field, also represented a co-defendant, David Carlton. One day before defendant's first trial, Carlton was found guilty of robbery after a stipulated bench trial. Field filed no motion to withdraw as counsel on the ground of conflict of interest in the instant case. Defendant based his defense upon Carlton's guilt. During the first trial the trial court questioned defendant regarding a possible conflict of interest. While defendant responded that he did not understand conflict of interest, he did state that he wanted Field to represent him despite an offer by the trial court to appoint other counsel.

■■ The sixth amendment to the United States Constitution guarantees assistance of counsel. There must be undivided loyalty to the defendant. This does not, however, mean that joint representation is unconstitutional *per se.* (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) Before we find that defendant was denied effective assistance of counsel because of conflict of interest, we must find that there was a

conflict of interest manifested at trial. *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157.

Neither defendant nor his counsel suggested to the trial court at either trial that a conflict existed. The first trial court, who attempted to examine the issue, found no conflict or apparent conflict. The second trial court apparently found no reason to consider the issue. Defendant did not raise the issue in his post-trial motion.

■■ ■ During the second trial Field insisted defendant was an innocent bystander. He also insisted Carlton and not the defendant had robbed the gas station. At the time of the first trial Carlton had already been found guilty at a stipulated bench trial. At the time of the second trial Carlton had been sentenced and did not testify against defendant. We find nothing in the record to show that a conflict of interest was manifested at the trial. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) The admission of guilt by one co-defendant and the insistence of innocence by another does not alone make their defenses antagonistic. (*People v. Barren* (1975), 32 Ill. App. 3d 78.) Therefore, we do not find that defendant was denied effective assistance of counsel. (*People v. Berland.*) Since we find no conflict of interest manifested at trial, we need not consider waiver.

For the reasons stated above the judgment of the circuit court of Peoria County is hereby affirmed.

Affirmed.

BARRY and STENGEL, JJ., concur.