THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY JONES *et al.*, Defendants-Appellants.

Fourth District    No. 17120

Opinion filed December 15, 1981.

STOUDER, J., specially concurring.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellants.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

The defendants, Gary Jones and Ronald Oliver, were each charged with three counts of armed robbery arising from events which occurred in Springfield between October 6 and 12, 1980. Following appointment of

separate counsel, the defendants moved to suppress admission of physical evidence seized, and statements made, at the time of their arrest, contending that the evidence resulted from an illegal arrest. The circuit court denied their motions, and the causes proceeded to a consolidated trial. There, the circuit court of Sangamon County, sitting without a jury, found each of the defendants guilty on all three counts. The court subsequently sentenced each defendant to three concurrent terms of 6 years' imprisonment. They now appeal from the denial of their motions to suppress.

At approximately 8:45 p.m., on October 12, 1980, Springfield police officers John Tolley and Larry Tumulty received a report of an armed robbery at a Taco Gringo restaurant on 31st Street. A lone gunman had just held up the restaurant and had taken an unspecified amount of cash. The police radio dispatch described the suspect as a thin, black male wearing a black jacket and a gray turtleneck sweater with a red stripe across the chest. The dispatch also said the suspect had left the scene on foot within the past 10 minutes and had headed north. With Tolley driving the unmarked patrol car, the officers parked in a used car lot at the corner of Elm and Cook Streets, which is approximately one mile from the restaurant. Tolley believed that this location gave the officers an excellent opportunity to observe the suspect if he was driving because the intersection was well lighted and well traveled. After 5 minutes had elapsed and several cars had driven past the officers' position, they observed a blue and white Grand Prix traveling westbound on Cook Street. Both officers testified that the car was not then violating any traffic ordinances. The car contained two black males. The officers clearly saw the car's passenger, who wore a gray turtleneck sweater with a red stripe across the chest. The passenger had turned around and peered intently out the rear window as the car passed the officers' unmarked patrol car. Tolley decided to pursue the car, and while doing so, he requested the police dispatcher to repeat the description of the robbery suspect. The dispatcher again informed the officers that the suspect was a thin, black male, wearing a black jacket and a gray turtleneck sweater with a red stripe across the chest. Upon hearing the reported information, the officers concluded that the passenger matched the description of the suspect, whereupon they proceeded to stop the suspect's car. The driver, defendant Oliver, and the passenger, defendant Jones, exited from their car and awaited the officers. Tolley ordered Oliver to produce some identification and then ordered him to place his hands on the car. Without being asked any questions, Oliver stated, "Why are you arresting me, I didn't go in with him." Following this statement, Jones said, "You got me, I did it." Without yet entering the defendants' car, the officers looked inside and saw money and a black jacket with a handgun in its holster

protruding from a jacket pocket lying on the floor. The officers then arrested the defendants, informed them of their *Miranda* rights, and took them to the police station. Neither defendant elected to have counsel present during the interrogation. Jones admitted to robbing the Taco Gringo restaurant at gunpoint. Oliver admitted he waited in his car a short distance from the restaurant and picked up Jones following the robbery. The defendants also confessed to having committed armed robberies on October 6 and October 11, 1980. One day later, an employee of Taco Gringo identified Jones in a police lineup as the person who had robbed the restaurant on October 12.

On appeal, the defendants contend that the circuit court erred in denying their motions to suppress physical evidence and confessions obtained following their arrest because the arresting officers lacked probable cause to believe that the defendants had committed an offense. In response, the State does not directly refute this contention, but argues that the police properly conducted a valid investigatory stop pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

■■ Our law is well established that a police officer may briefly detain a suspect for the purpose of investigating possible criminal behavior, even though the officer lacks probable cause to arrest that suspect. That decision to halt a suspect for temporary questioning must be founded upon specific, articulable facts known to the officer, combined with rational inferences therefrom. Because the degree of intrusion into the suspect's fourth amendment rights is temporary and therefore less significant than that of an arrest, the grounds needed to justify a forcible investigatory stop are less rigorous than the "more-probable-than-not" standard used to validate a full-fledged arrest. Although the supreme court has avoided directly defining what grounds are needed to justify a temporary seizure for investigation, such a stop will generally be upheld where the officer believes upon objective reflection that there exists a substantial possibility that the suspect has committed or is about to commit a criminal offense. One commentator has described the standard as follows:

> "[A] temporary seizure for investigation may be made of a particular person absent that degree of focusing upon him as an individual which would be needed to arrest. That is, a person may be characterized as a 'suspect' in the sense of being a legitimate object of a stopping for investigation even though the facts which direct attention to him do not focus upon him to the exclusion of other known or unknown persons." 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §9.3, at 68 (1978).

■■ In applying this standard to the instant case, we find that the information contained in the police radio dispatch, along with the reason-

able inferences drawn therefrom, and the officers' observation of the defendants' conduct sufficiently reduced the probability that persons other than the defendants had committed the armed robbery. Therefore, Officers Tolley and Tumulty acted upon the substantial possibility that the defendants were the offenders and lawfully stopped them for brief questioning. Of course, after the defendants had made their unsolicited, incriminating statements and after the officers had noticed the handgun and money in the car, the officers had probable cause to arrest the defendants.

First, the defendant Jones' gray turtleneck sweater was identical to the uniquely patterned sweater worn by the robbery suspect. Such similarity in apparel, in addition to a description of the suspect's race and sex (*People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209), narrows considerably the population of potential suspects. (See *District of Columbia v. M.M.* (D.C. App. 1979), 407 A.2d 698; *People v. Harris* (1975), 15 Cal. 3d 384, 540 P.2d 632, 124 Cal. Rptr. 536.) Although the radio dispatch stated that the suspect also wore a black jacket while the defendant Jones wore no jacket when the officers made their stop, such a variance did not substantially detract from their identification because it was reasonable to assume that the suspect might have removed his coat to avoid detection. (See 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §9.3(d)(1), at 88-89 (1978).) Likewise, the officers reasonably assumed that the suspect, who was reported to have left the scene alone and on foot, had arranged for use of an automobile and driver. Given our society's propensity for the automobile, such an assumption was eminently reasonable. (See *Grice.*) Moreover, to hold that the officers were unable to effect an investigatory stop of two or more individuals merely because the radio dispatch reported that a lone gunman had robbed the restaurant runs contrary to common sense and the case law. See *People v. Drummer* (1980), 81 Ill. App. 3d 626, 402 N.E.2d 307; *Franklin v. State* (Fla. App. 1979), 374 So. 2d 1151; *Commonwealth v. Johnson* (1978), 6 Mass. App. 944, 382 N.E.2d 1124.

In addition to the similarity between Jones and the description of the suspect, the officers became alerted to the car upon observing Jones' suspicious conduct. They reasonably concluded that Jones' prolonged peering through the rear window looked as though he was in apprehension of being followed. (See *Commonwealth.*) Although such furtive conduct in and of itself would not have supported an investigatory stop in the instant case, the conduct did strengthen the officers' reasonably based suspicions that the car contained the suspect.

Finally, the propinquity of the stop in relation to the time and place of the robbery increased the probability that the car contained the suspect. In less than 15 minutes from the time that the suspect left the

Taco Gringo restaurant on foot, the officers, who were located approximately one mile from the scene, observed a passenger in a car wearing apparel matching that of the suspect. Given the time necessary for Jones to walk to Oliver and his waiting car, the stop occurred well within the range of possible flight.

■■ The defendant Oliver also contends that, even assuming the officers had sufficient cause to stop the car to question Jones, they were unjustified in questioning and arresting him. Admittedly, mere association with a suspect is insufficient cause to stop an individual for investigation. Here, however, the officers acted on more than association. Upon noticing that Jones matched the description of the robbery suspect, the officers reasonably assumed that the driver, Oliver, was helping Jones avoid apprehension. Their suspicions were confirmed when Oliver asked why he was being arrested when he waited outside while Jones had entered the restaurant. Based upon this admission indicating that Oliver knew of the robbery, the officers, who had lawfully stopped the car and questioned Oliver, had probable cause to arrest both Jones and Oliver.

For the foregoing reasons, we affirm the judgments of conviction entered in the circuit court of Sangamon County.

Affirmed.

HEIPLE, J., concurs.

Mr. JUSTICE STOUDER, specially concurring:

I concur in the result reached by the majority but for different reasons. I think the efforts to distinguish between arrests and *"Terry* stops" as not being arrests depend on distinctions without a difference. Much judicial labor is being invested in answering the question: When is an arrest not an arrest? The answer is, of course, an arrest is not an arrest when it is a *Terry* stop. Another way of answering the question is to say a person is arrested only a little. Because articulable suspicion provides a much larger and vaguer umbrella under which to accomplish the same result, prosecutors feel no useful purpose is served in talking about arrests for probable cause. This practice is understandable.

In the instant case, accepting the testimony of the police officers as credible, it seems to me that they had probable cause to make the arrest initially of Jones and then of Oliver. The description of the robber and his wearing apparel was quite specific, and if the officers were able to identify Jones from this description as they said they could, then probable cause existed for his arrest. I therefore would affirm the convictions for these reasons.