THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KEITH D. WALN, Defendant-Appellant.

Fifth District   No. 82—615

Opinion filed November 16, 1983.

George R. Ripplinger, Jr., of Ripplinger, Dixon & Hoffman, of Belleville, for appellant.

John Baricevic, State's Attorney, of Belleville (Stephen E. Norris and Mark A. LaRose, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Following a jury trial in the circuit court of St. Clair County, defendant Keith Waln was convicted of burglary and sentenced to six years' imprisonment. He argues that the trial court erred in denying his motions to suppress evidence seized in a search of his car and to suppress a confession given to St. Clair County authorities.

At approximately 10 p.m. on April 25, 1982, the defendant's car was stopped by Caseyville police officers at the only entrance to a subdivision where a burglary had been reported as being in progress. St. Clair County deputy James Lay joined the Caseyville officers soon after the defendant's car was stopped and directed them to detain the defendant. The defendant instead left the police and led them on a high speed chase until his car ran off the road about one-quarter mile from where he was first stopped. He was issued several traffic citations and his license was taken for bond. Later, while he was still at that location, his car was searched, including the trunk, and he was placed under arrest. The defendant was transported to the St. Clair County jail, where he gave a statement to the authorities.

The defendant first contends that his initial detention by the Caseyville officers was improper. He reasons that his subsequent flight, the search of his car, his arrest and his confession are all products of that detention and should have been suppressed. He points out that when he was first directed to stop, he was not engaged in any criminal activity, nor was he committing any traffic violations. Moreover, at that time, the authorities did not have a description of any of the individuals observed at the scene of the burglary. The People respond that the officers nonetheless had sufficient information to make an investigatory stop of the defendant's car pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

The principles applicable to this issue are well settled. Under Illinois' codification of the *Terry* rule (Ill. Rev. Stat. 1981, ch. 38, par. 107–14), a police officer may, after identifying himself, stop a

person in a public place for a reasonable period of time if the officer reasonably infers from all of the circumstances that that person is about to commit or has committed an offense. Probable cause for arrest need not be shown for this detention, but the stop must be justified by specific and articulable facts which, when combined with rational inferences from those facts, warrant the intrusion. A mere hunch or suspicion is not sufficient. *People v. Fox* (1981), 97 Ill. App. 3d 58, 421 N.E.2d 1082; *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209, *cert. denied* (1981), 450 U.S. 1003, 68 L. Ed. 2d 207, 101 S. Ct. 1714.

Caseyville police officer Michael Mooney testified both at trial and at a hearing on the defendant's motion to suppress physical evidence. At 9:56 p.m. on April 25, 1982, Mooney received a radio dispatch concerning a burglary in progress at 103 Southern Drive in Caseyville. Three other police units responded with Mooney to that call. Mooney did not arrive at the scene of the burglary because he received a radio transmission from his sergeant informing him that there were two vehicles leaving the scene of the burglary and advising him to stop the vehicles. At the hearing on the motion to suppress, Mooney stated that the transmission did not include a description of the vehicles.

As a result of this information, Mooney stopped a black-over-red Dodge Charger driven by the defendant and Caseyville officer Gazawski stopped a blue Ford Granada. These cars were stopped at the only entrance to the subdivision containing the burglarized residence, approximately one-quarter to one-half mile from the site of the burglary, at 10:02 p.m., 30 seconds after Mooney received the radio transmission from his sergeant. It appears that a third car, a tan or brown AMC Pacer or Gremlin, was stopped subsequently at this location. Mooney testified that at the time he arrived at the entrance to the subdivision, the Charger and the Granada were the only two cars leaving the subdivision, although other cars were entering it and "one or two" additional cars may have later exited the subdivision.

Mooney asked the defendant for identification, which he produced. Mooney also inquired whether the defendant lived in the area, and he replied that he did not, but he was there to visit a friend known as "Buster." About 30 seconds after Mooney first stopped the defendant's car, St. Clair County deputy sheriff James Lay arrived at the scene of that stop. Lay recognized the defendant, whom, he stated, he was aware through fellow officers was an "admitted burglar." The defendant had not previously been arrested for burglary, and Lay had no personal knowledge of the defendant's connections with law enforcement authorities. Lay directed Mooney to detain the defendant

while he went to the burglarized residence, so Mooney instructed the defendant to pull his car to the side of the road. The defendant then left the entrance of the subdivision at a high speed.

These facts establish reasonable cause for the initial stop of the defendant's car. The authorities were aware that a burglary was in progress in a residential neighborhood or had been very recently completed at 9:56 p.m., and knew, within a minute or two after 10 p.m., that two cars were leaving the scene of that burglary. The knowledge of each of the police officers, when working together, is the knowledge of all (*People v. Hobson* (1983), 117 Ill. App. 3d 191, 452 N.E.2d 771), and so Michael Mooney was justified in acting upon the information furnished him through the radio transmissions. While that information did not include a description of any suspects or vehicles to be stopped, we cannot say that Mooney acted unreasonably by stopping the only two cars he saw leaving the sole exit to the subdivision, especially given the extremely close spatial and temporal proximity to the report of the burglary in progress. (*People v. Jones* (1981), 102 Ill. App. 3d 246, 429 N.E.2d 1101; *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209, *cert. denied* (1981), 450 U.S. 1003, 68 L. Ed. 2d 207, 101 S. Ct. 1714; *People v. Drummer* (1980), 81 Ill. App. 3d 626, 402 N.E.2d 307.) Furthermore, the recognition of the defendant by Deputy Lay as a person who had been connected with other burglaries furnished additional grounds to detain the defendant while Lay inspected the scene of the burglary. (*People v. Keith* (1972), 7 Ill. App. 3d 1071, 289 N.E.2d 103.) Under the evidence presented to the trial court, it did not err in deeming the initial stop of the defendant to be in accord with *Terry* standards.

Our holding that the defendant's car was properly stopped at the entrance to the subdivision undercuts much of the defendant's argument that the search of his car and his subsequent arrest were unreasonable. Since the initial stop of the defendant was legal, his precipitous flight from that location was, at the least, an additional factor to support the detention of the defendant where the chase came to an end. (*People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155, *cert. denied* (1979), 440 U.S. 938, 59 L. Ed. 2d 496, 99 S. Ct. 1285.) If cause existed to hold the defendant at the first location pending Lay's investigation of the burglary site, it necessarily existed in greater quantity at the second location.

While the defendant was being detained at the second location, Deputy Lay went to the site of the burglary, where he spoke to Dan Dervalis, who is a neighbor of the Cowgills, whose residence was burglarized. At trial, Dervalis testified that he was at home on April 25,

1982, when at about 9:30 or 10 p.m., he heard his dogs barking. He observed "a big gray car going real slow and two guys walking next to it." The men walked the length of the Cowgills' yard and then went between the Cowgills' trailer and their shed. Dervalis went outside and kept watch over the Cowgills' trailer for about five minutes. The back door of the trailer swung open, and two people exited the trailer carrying items. At that point, he could not tell whether these individuals were men or women, but he called out, "Hold it, boys." The two people ran away, dropping items as they went, although Dervalis observed that they still had some goods in their possession. Dervalis ran to the front of the Cowgills' trailer, where he saw an individual run across the street, carrying a white bag or pillowcase.

Dervalis then returned to his home and instructed his wife to telephone the police. He walked to the house of his neighbor, Buster Armstrong, to ask him about the gray car which Dervalis had seen earlier. That car was still in the road near the Cowgills' trailer at that time. Armstrong told Dervalis that the car belonged to his mother. The defendant and a woman with long black hair were also at the Armstrong residence when Dervalis arrived. The defendant was seated on his Charger. When Dervalis inquired about the break-in at the Cowgill residence, the three told him that they did not know anything about it. Dervalis then returned to his residence, where he stood outside until the authorities arrived. He was not certain if the defendant left the Armstrong residence during this period.

Dervalis spoke to Deputy Lay for five minutes between 10:30 p.m. and 11 p.m. In addition to relating to him the events recounted above, Dervalis said that he had seen two white males, "one short, stocky, shoulder length blond hair, with light colored T-shirt," and the other was a "skinny white male with darker hair." The first description fit the defendant. Lay then spoke to John Cowgill, who had recently arrived home. Cowgill told him that among the items taken from his residence were several guns, a box of jewelry and a white pillowcase. Lay returned to the location where the defendant was being held.

After arriving at that location, Lay asked the defendant if he could look in the trunk of his car. He replied that the trunk did not open and, in any case, he did not have a key for the trunk. Lay observed a key ring with the initial "K" on it on the ground four feet from the driver's door of the defendant's car. One of the keys was a Chrysler product trunk key, and Lay tried it on the trunk of the defendant's car. It opened, and inside was a white pillowcase containing pistols and a jewelry box. The defendant was then placed under arrest for burglary.

■■ ■ We agree with the People that the search of the defendant's vehicle was made with probable cause to believe that a crime had been committed and that evidence of it was in the defendant's vehicle. (*People v. Beil* (1982), 110 Ill. App. 3d 291, 442 N.E.2d 291.) The many corroborative details which establish probable cause need not be repeated. Thus, as probable cause for the search existed, the search of the defendant's trunk and the pillowcase in it were permissible according to the authority of *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, and *People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869. The fact that the property found in the defendant's trunk was the same type as that missing from the Cowgill trailer only adds to the inferences to be drawn from the defendant's close proximity to the offense, his flight from the officers once stopped, his attempt to prevent them from looking into his trunk, and his similarity to Dervalis' description of one of the men seen near the trailer. Viewing all of this evidence as a whole, we cannot find error in the trial court's determination that the defendant's arrest was supported by probable cause. *People v. Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275.

■ Finally, the defendant contends that his confession, given at the St. Clair County jail after his arrest, should have been suppressed. He argues only that it was the fruit of the unlawful search of his car. Having found that search to have been lawful, we must necessarily reject this argument. We also agree with the State that the record fails to show that the trial court erred in finding that confession to have been voluntarily made.

For these reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

HARRISON, P.J., and JONES, J., concur.