THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LEONARD BOWEN et al., Defendants-Appellees—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LEONARD BOWEN, Defendant-Appellee.

Fifth District Nos. 5—86—0372, 5—86—0670 cons.

Opinion filed December 3, 1987.—Rehearing denied January 8, 1988.

John R. Clemons, State's Attorney, of Murphysboro, and Charles Garnati, State's Attorney, of Marion (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Richard E. White, Chartered, of Murphysboro, for appellee Leonard Bowen.

JUSTICE LEWIS delivered the opinion of the court:

The State appeals from judgments of the circuit courts of Jackson County and Williamson County granting defendant Leonard Bowen's motions to suppress evidence. Because the causes are factually related, they have been consolidated for review.

A hearing was held on defendant's motion to suppress in Jackson County on May 9, 1986. The following testimony was presented.

Officer Dwight Stearns of the Carbondale police department testi-

fied that he and Officer Buddy Murphy were eastbound on Walnut Street in Carbondale on the evening of February 5, 1986, when they noticed a black truck traveling eastbound in front of them with no rear license plate light in violation of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 12—201(c)). The officers followed the truck five city blocks before they stopped it. Stearns said, prior to stopping it, they had received information that the truck was registered to Bernard Bowen and his sister, Rosetta. Officer Stearns said he had previously arrested Bernard Bowen for aggravated assault and unlawful use of weapons. He knew at the time of the traffic stop that Bernard Bowen was dead. Stearns did not know who was driving the truck when they decided to stop it.

The officers activated their rotating flashing lights and, as the truck pulled over to the side of the road, Officer Murphy pulled in behind it. Officer Stearns got out of the squad car and walked to the driver's side of the truck. The driver, defendant, was already out of the truck when Stearns approached. Murphy stayed in the squad car, calling in the stop. After he had finished, he got out to assist Stearns.

Stearns did not know defendant; however, he said he recognized defendant's name when defendant produced his driver's license. Stearns stated he had previously received information from two other police officers, Detective Corey and Agent Mick, that defendant had inherited his brother Bernard's cocaine business and, trafficking in cocaine being a dangerous venture, Corey and Mick thought there was a "good chance" that defendant might be armed. Because Bernard Bowen had been charged criminally in the past, Stearns thought defendant Leonard Bowen might be armed. To Stearns' knowledge, defendant had never been arrested before.

When Stearns saw the name on defendant's driver's license, he informed defendant that he had been stopped for a traffic violation and, before Stearns completed his "investigation," he would search defendant and the vehicle for weapons. Stearns searched defendant while Officer Murphy searched defendant's passenger, Winston McCurdy. Both defendant and McCurdy had already gotten out of the vehicle.

After Stearns searched defendant, who did not attempt to flee and on whom Stearns found nothing, Stearns searched the interior of the truck. In a closed console in the middle of the front seat, Stearns found a small plastic bag containing green plant material Stearns believed to be cannabis. Stearns informed defendant he was under arrest for possession of cannabis. Murphy informed McCurdy that he too was under arrest.

Stearns returned to the truck to continue searching and, on this occasion, found three .357 caliber bullets and one .38 caliber bullet. Stearns had the truck towed and had Winston McCurdy transported to the police station by another patrolman. Stearns and Murphy took defendant in their car.

On direct examination, Stearns testified that, en route to the station, he asked defendant about the ammunition he had found. Defendant responded that his brother had recently been killed and he kept a gun around the house for protection. Stearns then asked defendant if the gun was at his house and defendant replied that it was. Stearns did not give defendant *Miranda* warnings prior to the conversation.

On cross-examination, Stearns said defendant initiated the conversation. According to Stearns, defendant asked why the officers had searched the truck and what they were looking for. Stearns said he told defendant that they were checking for weapons while they conducted their traffic investigation. Stearns said defendant responded, "I don't carry a gun in the truck; I keep it at my house."

On redirect, defense counsel confronted Stearns with his police report wherein Stearns stated that he, not defendant, initiated the conversation by asking defendant about the ammunition he had found in the truck. Stearns admitted that the report made no mention of defendant's asking questions. Stearns had previously testified that the report was a complete account of the events of February 5.

Defendant Leonard Bowen testified that the vehicle he had been driving belonged to his sister, Rosetta Bowen. He had permission to drive the vehicle on the night in question.

Officer Buddy Murphy testified that on February 5, 1986, at approximately 9:36 p.m., he and Officer Stearns were at the intersection of Wall and Walnut in Carbondale when they saw a black Dodge Ramcharger eastbound on Walnut with an equipment violation. They stopped the truck near the University Mall.

Upon stopping the vehicle, Murphy radioed pertinent information in to the radio operator. The operator gave Murphy the vehicle's registered owners' names and stated that, if Leonard Bowen was driving, his license was suspended. Murphy was on the radio as Stearns approached the truck. As Stearns approached, the two people in the vehicle got out.

Murphy completed his radio communication and got out of the squad car to assist Stearns, who was with defendant. Murphy went around to the side of the truck where McCurdy was standing. Both men were asked to move to the rear of the vehicle, where Stearns "patted" defendant and Murphy did the same to McCurdy.

At this point Stearns returned to the truck. Murphy said defendant asked why he had been stopped and Murphy answered for an equipment violation and a suspended license. Murphy said while they were standing at the rear of the vehicle he informed defendant that he was under arrest for driving with a suspended license. Stearns did not hear his conversation with defendant because Stearns was already in the truck searching. When Stearns returned from the vehicle he informed Murphy that he had found what appeared to be cannabis inside. Defendant and McCurdy were placed under arrest for possession of cannabis.

The officers then transported defendant, in handcuffs, to the police station. En route, Murphy and defendant had a conversation regarding defendant's suspended license. Murphy could not remember whether he or defendant had initiated the conversation. Stearns was the first to mention the ammunition found in the vehicle. Before Stearns mentioned it, Murphy was unaware that any ammunition had been found. Either Stearns or Murphy asked defendant if he had a firearm owner's identification card (FOID) and he stated he did not.

Armed with the fruits of the automobile search, the results of the "conversation" with defendant which followed, and the hearsay information obtained from other officers regarding defendant's alleged drug trafficking and possession of weapons, Stearns sought and obtained a search warrant for defendant's residence in Williamson County on the following day, February 6, 1986. As a result of the search pursuant to that warrant, as well as subsequent searches pursuant to subsequent warrants issued on the basis of evidence discovered in the initial search, defendant was charged under section 83—2 of the Criminal Code of 1961 with possession of a firearm without requisite firearm owner's identification (Ill. Rev. Stat. 1985, ch. 38, par. 83—2), and under section 401(a)(2) of the Illinois Controlled Substances Act with possession of cocaine with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)).

On April 30, 1986, defendant filed a motion in Williamson County to suppress the evidentiary items seized pursuant to the search warrant issued in Williamson County. The basis for defendant's motion was that the search of the truck he was driving in Jackson County was illegal, as was the seizure of cannabis and ammunition in the course of that search. Moreover, defendant claimed the alleged statements he was purported to have made resulted from the illegal search and were also subject to exclusion. Defendant contended that the seizure of the evidentiary items pursuant to the Williamson County search warrant was accomplished by using evidence and information

obtained in the illegal search in Jackson County; hence, it too should be excluded as fruit of the primary illegality.

On May 12, 1986, the circuit court of Jackson County, Judge Watt presiding, granted defendant's Jackson County motion to suppress, excluding for purposes of the Jackson County charges: the cannabis, the ammunition and the alleged statements of defendant. The court specifically stated that it was not ruling on the merits of the Williamson County warrant or charges.

The court, after noting the testimony presented and specifically noting that Stearns' testimony was contradicted in some respects by police reports he filed, ruled that Officer Stearns' belief that defendant might be armed was based upon no more than rumor or gossip and was unsupported by any independent information he possessed regarding defendant or anything he observed before or during the stop. Thus, a *Terry* patdown for weapons was not authorized, nor was the search of the vehicle which produced the cannabis and the ammunition. In sum, the court concluded that the search was unlawful and the items found pursuant to the illegal search, and the alleged statements defendant made thereafter, had to be excluded. The court cited as supporting authority, *inter alia, People v. Wetherbe* (1984), 122 Ill. App. 3d 654, 462 N.E.2d 1.

On May 16, 1986, defendant filed a supplemental motion to suppress in Williamson County, citing the ruling in Jackson County and arguing that the circuit court of Williamson County was bound by the Jackson County determination that the evidence seized there was illegally obtained. On June 12, 1986, defendant's motions to suppress in Williamson County were called for hearing.

Defendant argued that principles of collateral estoppel and *res judicata* required Williamson County's acceptance of the Jackson County determination that the evidence seized there was illegally obtained. Defendant argued that the evidence seized pursuant to the search warrants in Williamson County was obtained as a result of information garnered in the course of the illegal search in Jackson County and the evidence seized in Williamson County was therefore subject to exclusion.

The State argued that Judge Watt's ruling excluding the cannabis, ammunition and alleged statements of defendant exceeded the scope of the issue before him. The only charges pending against defendant in Jackson County were unlawful possession of cannabis and driving while license suspended; hence, the State argued, rulings on the admissibility of ammunition found in the truck defendant had been driving and the alleged statements pertaining to defendant's possession of

a gun were superfluous to the charges before the court. Since the issue of fact determined by the court was unnecessarily resolved, *i.e.*, whether or not the ammunition and statements were admissible in prosecutions for possession of cannabis and driving with a suspended license, collateral estoppel would not apply.

The court took the matter under advisement and, on October 1, 1986, granted defendant's motion to suppress the evidence seized in Williamson County.

■ Before proceeding to examine the issues raised by the State on appeal, we note that the State has apparently abandoned the argument advanced in Williamson County that Judge Watt's suppression of the ammunition and defendant's alleged statements went beyond the issue before him and thus was not binding on the circuit court of Williamson County. The State does not argue this point nor does it cite cases to support the position it took in Williamson County. The contention advanced below is therefore waived on appeal. *People v. Mackins* (1974), 17 Ill. App. 3d 24, 308 N.E.2d 92; 107 Ill. 2d R. 341(e)(7).

It is, moreover, without merit. Section 114—12(a)(1) of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 114—12(a)(1)) provides:

"(a) A defendant aggrieved by an unlawful search and seizure may move the court for the return of property and to suppress as evidence *anything so obtained* on the ground that:

(1) The search and seizure without a warrant was illegal ***." (Emphasis added.)

Clearly, the scope of a motion to suppress cannot be limited as the State argued. To do so would require initial determinations of relevancy at a point in the proceedings where the import of a piece of evidence might not be readily apparent.

■ ■ Moreover, the State's position could result in repetitious hearings involving the same set of facts. The fact that the same item of evidence may be relevant in several trials involving the same defendant does not, without more, require repeated hearings as to the validity of the arrest and search which produced the item. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283; see *People v. Armstrong* (1973), 56 Ill. 2d 159, 306 N.E.2d 14.) Where an ultimate issue of fact is thoroughly and completely litigated at a prior hearing, there is no reason to relitigate the issue absent additional evidence or peculiar circumstances. *People v. Coleman* (1981), 100 Ill. App. 3d 306, 426 N.E.2d 1124; also see *People v. Mordican* (1976), 64 Ill. 2d 257, 356 N.E.2d 71.

■ Judge Watt had jurisdiction to rule on defendant's motion in

Jackson County and it cannot be said that he lacked the authority to rule on the legality of the seizure of the evidence in question and the admissibility of any statements defendant made. His ruling determined the question of admissibility and that issue could not be relitigated.

On appeal, the State contends that (1) the officers properly frisked the defendant and searched his car for weapons; (2) the evidence seized and the statements made by defendant were obtained as a result of a search incident to a lawful custodial arrest; and (3) the evidence would have been discovered inevitably following defendant's custodial arrest for driving with a suspended license. The State acknowledges that our decision with respect to the order entered in Jackson County will determine the outcome of the Williamson County cause.

■ We reject the State's contention that Officer Stearns had reason to frisk defendant or search his vehicle for weapons. Stearns' belief that defendant might be armed was, as Judge Watt stated in the suppression order, "based upon no more than rumor or gossip and was unsupported by any independent information he possessed regarding defendant or anything he observed before or during the stop."

Stearns knew, at the time of the traffic stop, that the truck in question was registered jointly to Bernard Bowen and his sister, Rosetta. Stearns claimed to have arrested defendant's brother, Bernard Bowen, for aggravated assault and unlawful use of weapons. He said Bernard Bowen was involved in cocaine trafficking; however, neither Stearns nor Murphy testified that Bernard Bowen had ever been charged with or convicted of a cocaine-related offense. Moreover, Stearns testified that he knew when he stopped the truck that Bernard Bowen was dead; therefore, he knew Bernard Bowen could not have been inside the truck and could not have posed a threat to his safety. The search for weapons cannot be justified on the basis that the stopped vehicle had at one time belonged to Bernard Bowen.

Stearns also testified he had been told by Detective Corey and Agent Mick that defendant Leonard Bowen had inherited his brother Bernard's cocaine business and, trafficking in cocaine being a dangerous venture, Corey and Mick thought there was a "good chance" that defendant might be armed. Neither Corey nor Mick testified at the suppression hearing; therefore, the basis for their beliefs, if in fact there was any articulable basis, could not be ascertained. Had Corey and Mick testified, they might have been able to state facts to support their beliefs that defendant was involved in the cocaine business and

was armed. However, they did not testify and we cannot assume that they possessed sufficient facts to support Stearns' search where Stearns failed to articulate what facts, if any, he had received from Corey and Mick. Stearns articulated no facts to support his belief that defendant was involved with cocaine and armed.

Officer Stearns offered no testimony to indicate that defendant's conduct threatened him in any way. Defendant and his passenger got out of the car as Stearns approached and defendant was apparently cooperative and produced his driver's license, which Stearns had no reason to doubt was valid. Prior to the initial search of the vehicle, defendant and his passenger, Winston McCurdy, were asked to step to the rear of the truck and they complied with that request. While Stearns searched, defendant and McCurdy were under the watchful eye of Officer Murphy. Nothing defendant or McCurdy did indicated that they were armed or posed a threat to the officers' safety; thus, a limited search for weapons was unwarranted and the seizure of evidence within defendant's vehicle cannot be justified on that basis.

■ Essentially, all the police knew was that defendant was in a car formerly registered to Bernard Bowen and that defendant was Bernard's brother. That relationship is clearly insufficient to support the search. If it were sufficient, relatives of those involved in criminal activity could be searched at will by police officers. Simply because someone associates with another involved in criminal activity, it does not follow that that person is also involved in illegal conduct. See *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889.

■ ■ The justifications offered to support the search for weapons are so tenuous that we question Stearns' motives in conducting the search. Stopping a person for a minor traffic violation does not, standing alone, justify a search of the person or vehicle. (*People v. Watkins* (1960), 19 Ill. 2d 11, 166 N.E.2d 433; *People v. Walls* (1979), 71 Ill. App. 3d 68, 389 N.E.2d 6.) We believe Stearns' supposed fear for his safety was a mere pretext concealing an investigative police motive. Stearns had no reason to believe defendant would be armed; however, it is likely that Stearns and other officers would have relished the opportunity to search defendant for cocaine since they believed he had inherited his brother's cocaine business. Where the purpose of a search is exploratory in nature it will be deemed illegal and the evidence so found must be excluded. *People v. Dennison* (1978), 61 Ill. App. 3d 473, 378 N.E.2d 220.

■ The State's second contention, that the search could be justified as incident to a lawful arrest for driving with a suspended license, is untenable.

It does not appear from Stearns' and Murphy's testimony that Murphy ever told Stearns, during the course of the traffic stop, search or arrest, that defendant's driver's license had been suspended. The search which uncovered the cannabis and the search which followed defendant's arrest for possession of cannabis were both conducted by Stearns, acting without any knowledge of the suspension and without direction from Murphy or communication with him.

While it is true, as the State argues, that police officers are entitled to rely upon information furnished to them by other officers and that the knowledge of one officer, working in concert with others, is the knowledge of all (see *People v. Fox* (1987), 155 Ill. App. 3d 256, 508 N.E.2d 475; *People v. Waln* (1983), 120 Ill. App. 3d 73, 457 N.E.2d 979), the cases cited by the State are inapposite. In both *Fox* and *Waln*, officers were involved in investigations concerning particular offenses of which all officers were aware. In *Fox*, officers were conducting surveillance on a drug transaction, anticipating an arrest of the individuals involved. In *Waln*, officers were investigating a burglary. In each case, the officers furnishing information to other officers in the course of the investigation possessed facts sufficient to justify the actions taken by the officers acting upon that information. In each case, there was some direction to act by an officer possessing information sufficient to justify the action taken. In each case, the officers were aware of a specific criminal offense which was the focus of the investigation and all the officers involved acted with that offense in mind, whether they acted independently based upon facts they observed or at the direction of others who were aware of facts furnishing cause to act.

That is not true in this case. Stearns was not aware of the suspended license, nor was he directed by Murphy to search the truck. Stearns acted alone, without reference to Murphy's information. Stearns could not have conducted a search incident to a lawful arrest for driving with a suspended license where he was unaware of the arrest, or the basis for it, and was not directed to act by Murphy. The incidental search must be made in connection with a valid arrest. (*United States v. Pisano* (7th Cir. 1951), 193 F.2d 361.) By definition, a thing "incidental" to another appertains to, or depends upon, the other. (Black's Law Dictionary 686 (5th ed. 1979).) Here, Stearns' search of defendant and the truck obviously had no connection with the arrest for a suspended license. Stearns acted without any knowledge of the arrest for driving with a suspended license and without direction from Murphy to search. Under the facts of this case, Murphy's knowledge cannot be imputed to Stearns. Therefore, neither

search conducted by Stearns can be justified as incident to Murphy's arrest of defendant for driving with a suspended license.

Since Murphy's knowledge cannot be imputed to Stearns, Stearns' actions must be justified, if at all, by reference to articulable facts known to him. As we have already indicated, Stearns' initial search of the truck was unlawful because he lacked a reasonable basis for believing he was endangered by the presence of weapons. Since the initial search which produced the cannabis was illegal, and as we have noted seemingly pretextual, the resulting arrest for possession of cannabis was also illegal. Stearns' arrest of the defendant for possession of cannabis is tainted by the illegal search and flows directly from it. (See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) Therefore, the search Stearns conducted after he placed defendant under arrest for possession of cannabis cannot be justified as incident to a lawful arrest for cannabis. The arrest itself must be valid before a search may be justified as incident to arrest. *People v. Wetherbe* (1984), 122 Ill. App. 3d 654, 462 N.E.2d 1.

■■■ Finally, the State urges that the cannabis and ammunition in the truck would have inevitably been discovered as a result of Officer Murphy's custodial arrest of defendant for driving with a suspended license.

The State failed to raise this theory in the circuit court. The State argued below that the search was justifiable as a *Terry* limited search for weapons or as a search incident to a lawful arrest. The State did not advance inevitable discovery to justify admission at the trial level. It has therefore waived the issue on appeal. The principle of waiver applies to the State as well as to the defendant. (*People v. McAdrian* (1972), 52 Ill. 2d 250, 287 N.E.2d 688.) As noted in *McAdrian*, litigation should not be presented in a piecemeal fashion. In the interest of judicial economy, all theories a party intends to rely upon should be advanced in the trial court. As is too often the case, inevitable discovery was not urged as a theory for admission in the trial court. While it is within our discretion to consider this theory now, we decline to do so.

We turn now to the question of admissibility of defendant's alleged statements. Defendant was alleged to have admitted that he had a gun at his house and he did not have a firearm owner's identification card. It was that admission which figured prominently in the issuance of a search warrant in Williamson County and led to the discovery of still more incriminating evidence. It is undisputed that defendant was not given *Miranda* warnings prior to making the statements. However, there was a question at the suppression hearing

as to whether defendant or Stearns initiated the conversation which led to the statements.

At the suppression hearing, Stearns first testified that he had asked defendant about the ammunition he had found in the truck. When questioned by the prosecutor, Stearns said he had merely responded to defendant's inquiries. In his complaint for a search warrant in Williamson County, Stearns claimed that defendant had volunteered the inculpatory statements. His police report contradicts that version. In the report, Stearns admits he had asked defendant about the ammunition.

Murphy confirmed that Stearns had asked defendant about the ammunition. In fact, Murphy testified that either he or Stearns had asked defendant whether he had a FOID card and defendant responded that he did not.

■■■ Determinations of credibility are within the province of the trial court and its findings will not be disturbed on review unless they are contrary to the manifest weight of the evidence. (*People v. Rodriguez* (1986), 141 Ill. App. 3d 923, 491 N.E.2d 53.) The trial court not only heard the testimony, but also viewed the demeanor of the officers as they testified. The court noted the contradictions in Stearns' testimony in its findings. The court suppressed the statements. It implicitly found that Stearns initiated the conversation.

There is, indeed, little doubt that Stearns initiated the conversation by questioning defendant about the ammunition he had found in the course of his illegal search. He admitted as much at one point in his testimony and Murphy also testified to that effect. The fact that the police interrogated defendant, the absence of *Miranda* warnings, and the prior illegal search require suppression of the statements.

■■ The rule of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, requires the suppression of statements made by a defendant in response to custodial police interrogation unless preceded by a statement of basic constitutional rights and a waiver of those rights. (*People v. Newsome* (1983), 117 Ill. App. 3d 1005, 454 N.E.2d 353.) As it appears that defendant was subjected to questioning by the officers, we need only determine whether he was in custody. Both officers stated that defendant was placed under arrest, handcuffed, put in a police car, and taken to the police station. His statements were made en route to the station. He was clearly in custody when the statements were made.

■■ Even if the statements in this case were found to be voluntary under the fifth amendment of the Federal Constitution, the fourth amendment issue remains (see *Brown*, 422 U.S. at 601-02, 45

L. Ed. 2d at 425-26, 95 S. Ct. at 2260-61). The statements here were obtained almost immediately following an illegal search and an illegal arrest for cannabis. The statements were obtained by confronting defendant with the ammunition seized during the course of the unlawful search. Clearly, the statements were procured by exploitation of the illegality. We do not consider Murphy's arrest of defendant for a suspended license an intervening circumstance sufficient to break the causal connection between the illegal conduct and the statements. (See *People v. Agnew* (1987), 152 Ill. App. 3d 1037, 504 N.E.2d 1358.) Given the causal connection between the illegal search and the statements, the temporal proximity of an illegal arrest to the statements, and what we find to be questionable police conduct (*Brown*, 422 U.S. at 603-04, 45 L. Ed. 2d at 426-27, 95 S. Ct. at 2261-62), we find the statements were properly suppressed.

While it is not clear from the record which analysis the court utilized to suppress the statements, either would have been proper and one or the other was certainly the basis for the court's ruling. We find the suppression appropriate no matter what the court's reasoning may have been. See *People v. Dyer* (1986), 141 Ill. App. 3d 326, 490 N.E.2d 237; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.

The State concedes that our disposition of the Jackson County case will determine the outcome of the Williamson County case as well. We will therefore briefly treat the question of the Williamson County suppression.

 The evidence seized in Williamson County was obtained as a result of the illegal search and interrogation in Jackson County. It is, therefore, subject to exclusion. The "fruit of the poisonous tree" doctrine was developed to prevent admission of evidence indirectly obtained as a result of information acquired through an unlawful search and seizure. (*Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182; *Nardone v. United States* (1939), 308 U.S. 338, 84 L. Ed. 307, 60 S. Ct. 266.) Stearns used the evidence and statements illegally obtained in Jackson County to procure a search warrant in Williamson County. Thus, the evidence seized in Williamson County was come at by exploitation of the prior illegality and is inadmissible. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; *Agnew*, 152 Ill. App. 3d at 1044-45.) Where the initial search or arrest is unlawful neither can form the basis for the issuance of a search warrant and evidence so obtained is inadmissible. (*People v. Scaramuzzo* (1933), 352 Ill. 248, 185 N.E. 578; *People v. One 1968 Cadillac Automobile VIN No.*

178

*J8316714* (1972), 4 Ill. App. 3d 780, 281 N.E.2d 776.) Accordingly, the evidence seized in Williamson County was properly suppressed.

A trial court's ruling on a motion to suppress will not be set aside unless clearly erroneous. (*People v. White* (1987), 117 Ill. 2d 194, 512 N.E.2d 677.) The rulings of the respective courts were proper.

No. 5—86—0372, Affirmed.

No. 5—86—0670, Affirmed.

KARNS, P.J., and HARRISON, J., concur.