THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GREGORY S. ANDERSON, Defendant-Appellee.

Second District   No. 2—87—0688

Opinion filed November 16, 1988.

INGLIS, J., dissenting.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Douglas R. Roberts, of Wilson & Roberts, of Waukegan, for appellee.

JUSTICE REINHARD delivered the opinion of the court:
Defendant, Gregory S. Anderson, was charged by information, filed March 6, 1987, in the circuit court of Lake County, with unlawful possession with intent to deliver more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 705(e)) and unlawful possession of more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 704(e)). Defendant moved to suppress the evidence seized during a warrantless search of his vehicle. After a hearing on July 10, 1987, the circuit court, finding the police officer's testimony less than credible, concluded that the officer's opening of the door of defendant's vehicle, presumably to determine the gross vehicle weight rating, was a sham for purposes of searching the interior of the vehicle for marijuana. The circuit court thereupon granted defendant's motion to suppress. The State filed a certificate of impairment and appeals pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d 604(a)(1)).

We briefly summarize the relevant facts. At the suppression hearing, David Ronzani, a police officer for the Village of Gurnee, testified that on February 18, 1987, at approximately 7:45 p.m., he saw defendant driving a 1979 Chevrolet Blazer truck. The Blazer had oversize wheels, and the bumper height was equal to Ronzani's front driver's door window. Believing from his previous experience that defendant's bumpers exceeded the legal limit, the officer turned around to follow defendant, who pulled into a driveway at 3631 Glen Flora, Gurnee, Illinois. Defendant and his two passengers got out of the vehicle. The officer pulled his squad car into the driveway behind defendant's vehicle. Defendant approached the officer's open window, and Officer Ronzani explained to defendant that he was being stopped

for improper bumper height. Ronzani got out of his car and measured the front bumper height, which he later determined to be in excess of the legal limit by four inches. He then measured the rear bumper height, which he subsequently determined to be in excess of the legal limit by four inches. While measuring the vehicle, Ronzani noticed a strong odor of marijuana smoke on defendant. He called defendant over to the squad car, opened up the Illinois Vehicle Code, and showed defendant the section regarding bumper heights. He then asked defendant what the gross weight of his vehicle was. Defendant replied that the weight was between 6,500 and 8,000 pounds.

Ronzani at first did not recall whether he, at that time, issued two uniform traffic citations charging violations of the height restrictions for bumpers found in the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 12—608). However, he later testified that he believed he wrote the tickets before he went to the Blazer and that he opened the door because he wanted to write the exact gross weight of the vehicle on the back of the tickets so he could testify to it in court. Ronzani testified that, because defendant was uncertain of the gross weight of the Blazer, he went to the Blazer and opened the driver's door to check the Federal tag, without asking defendant's permission.

Although he first indicated the tag was on the doorjamb, he clarified that he first looked at the doorjamb and then saw the tag on the door edge containing the latch which meets the doorjamb.

As he used his flashlight to observe, the light shined into the Blazer, where Ronzani observed a small pipe on the floorboard between the bucket seats. He also observed residue inside the bowl of the pipe. He further smelled marijuana smoke inside the vehicle. Based on his experience, he concluded the pipe was used for smoking marijuana. Ronzani read defendant the *Miranda* warnings and then asked if there was any more marijuana. Defendant produced two cookie cans which contained marijuana and rolling papers. At that time, Ronzani informed defendant that he was under arrest and placed him in the squad car in handcuffs. Ronzani then searched the Blazer and found more marijuana and several pipes. When Ronzani confronted defendant with this additional evidence and asked him if there was anything else, defendant said there was a suitcase in the backseat area which contained marijuana. Ronzani opened the suitcase and discovered more baggies containing marijuana.

Theresa Bouma testified that defendant was her sister's fiance. She saw defendant drive into the driveway of her home, and Kathy Bouma, Micki Decaden, and defendant got out of the truck. Defendant approached the squad car and spoke to the officer for a minute or

so. She saw the officer measure the front and rear bumpers and then observed him write the tickets and give them to defendant. Defendant and the officer continued talking for several more minutes, then walked back to the truck where the officer opened the driver's door. She said that the officer looked at the tag and then looked into the rest of the Blazer. She described a head movement, but said that he disappeared for 5 to 10 seconds, as if bending down, and that she was unable to see what he did. He then stood up and shut the door.

Phyllis Bouma testified that she observed the stop of defendant in the driveway from inside the house. She indicated that she saw defendant talk to the officer, saw the officer measure the bumpers, and saw the officer write something and hand it to defendant, who put it in his shirt pocket. She then moved away from the window of the house.

Defendant testified that, after he was stopped, he had a conversation with Officer Ronzani regarding the height restrictions for vehicle bumpers. Ronzani asked whether he knew the gross vehicle weight rating of the vehicle, and defendant responded that it was 6,500 pounds. The officer wrote the tickets and gave them to defendant, who put them in his pocket; then the officer walked to the Blazer, saying that he was going to verify the weight rating of the vehicle. Ronzani then opened the door and looked for the tag. Defendant said that the tag was on the door edge, at the level of the glass.

Ronzani turned on the flashlight and looked on the door frame of the vehicle first; he then scanned across the inside with the flashlight and bent over a little. Thereafter, he found the tag on the door edge and read defendant his rights. Defendant testified that the metal pipe, which Ronzani stated he saw, was inside the closed console.

While the circuit court found that Officer Ronzani had probable cause to stop defendant, the court determined that Ronzani had already issued tickets to defendant prior to opening the Blazer door. The court further concluded that Ronzani's testimony was not credible as to the reason for opening the Blazer door and that the reason given was "a sham for purposes of searching the interior of the vehicle" to find marijuana. The motion to suppress evidence was granted.

The issue before us is whether the trial court properly granted defendant's motion to suppress. Defendant failed to file a timely brief, and we denied his belated motion for leave to file a brief. Nevertheless, the question can be decided on the merits without the aid of his brief and in accordance with *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The State presents several contentions on appeal. Initially, it dis-

putes the circuit court's finding that Officer Ronzani opened the door to find evidence of a marijuana offense. The principal argument advanced, however, is that, because an element of the traffic offense was the gross weight rating of defendant's vehicle, Officer Ronzani was obligated to obtain evidence of the gross weight which was contained on a tag on the door edge mandated by Federal law. Analogizing this case to a search to locate a vehicle identification number (VIN) inside an automobile, held proper in the circumstances present in *New York v. Class* (1986), 475 U.S. 106, 89 L. Ed. 2d 81, 106 S. Ct. 960, the State maintains that the search was proper even if the motivation was to search for marijuana. Finally, the State makes a brief argument that the odor of marijuana emanating from a vehicle gives an officer probable cause to conduct a warrantless search of a vehicle and, under the facts here, the officer smelled marijuana and, therefore, had probable cause to search the vehicle.

Addressing first whether Officer Ronzani could open the vehicle door and conduct a warrantless search of the door edge of the Blazer to determine the gross vehicle weight rating of the Blazer, no cases have been cited, nor have we found any cases addressing whether this is constitutionally permitted. In *New York v. Class*, the Supreme Court held that the action of a police officer, who stopped the defendant for two traffic violations, in opening the door and reaching into the interior of defendant's automobile to move papers on the dashboard obscuring the VIN, was sufficiently unintrusive to be a constitutionally permitted search in light of the lack of a reasonable expectation of privacy in the VIN, thereby justifying seizure of a weapon observed in the car during that intrusion. (475 U.S. at 119, 89 L. Ed. 2d at 93, 106 S. Ct. at 968.) Critical to the Court's analysis was the important role played by the VIN in the pervasive governmental regulation of the automobile and the efforts by the Federal government to ensure that the VIN is placed in the plain view of someone outside the vehicle. (475 U.S. at 111, 89 L. Ed. 2d at 89, 106 S. Ct. at 964-65.) For these reasons, the Court held that there was no reasonable expectation of privacy in the VIN. (475 U.S. at 114, 89 L. Ed. 2d at 90, 106 S. Ct. at 966.) While there was an intrusion amounting to a search when the officer reached into the vehicle and moved the papers covering the VIN, such a search under the facts was sufficiently unintrusive to be constitutionally permitted. 475 U.S. at 119, 89 L. Ed. 2d at 93, 106 S. Ct. at 968.

It is necessary, therefore, that we determine as a threshold inquiry whether defendant had a reasonable expectation of privacy in the tag containing the gross vehicle weight rating located on the door

edge of his Blazer. The defendant would have a reasonable expectation of privacy in the tag located on the door edge if he manifested a subjective expectation of privacy in the tag which society is willing to accept as objectively reasonable. See *California v. Greenwood* (1988), 486 U.S. 35, ___, 100 L. Ed. 2d 30, 36 108 S. Ct. 1625, 1628.

■ In the present case, defendant manifested a subjective expectation of privacy in the tag and its location by closing the door of his vehicle upon exiting. Such an expectation of privacy is objectively reasonable by society's standards. Although people do not have the same expectation of privacy in their automobiles as they do in their homes (*Class*, 475 U.S. at 112-13, 89 L. Ed. 2d at 89-90, 106 S. Ct. at 965), they do not surrender all of their fourth amendment protection when they enter their automobile. (*Class*, 475 U.S. at 112, 89 L. Ed. 2d at 89, 106 S. Ct. at 965.) The door of the automobile is an integral aspect of retaining the privacy, albeit diminished, of the passenger compartment. Although it is necessary to momentarily sacrifice that privacy upon entering and exiting a vehicle, ordinarily the doors of a vehicle are left closed while it is parked or in operation. Thus, in most situations the door edge is not exposed to the world or in plain view of a police officer making a routine traffic stop or conducting a roadblock. Even though defendant voluntarily exited his vehicle upon being stopped, he immediately closed the driver's door, thereby manifesting his expectation of privacy.

We recognize that the Court in *Class* at one point in the opinion stated that "[n]either of these locations [inside the doorjamb or atop the dashboard] is subject to a reasonable expectation of privacy." (*Class*, 475 U.S. at 118, 89 L. Ed. 2d at 93, 106 S. Ct. at 968.) In proper context, however, this one statement is in reference to the VIN, which is required to be placed in plain view of someone outside the vehicle for passenger cars manufactured after 1969. Reading the *Class* opinion in its totality, we are convinced that the VIN's current mandated visibility from the outside, which makes it similar to the exterior of an automobile, is the key factor which makes it unreasonable to have an expectation of privacy in the VIN whether it is found on the dashboard as now required by law, or inside the doorjamb for pre-1969 vehicles. There is no similar requirement that the gross vehicle weight rating tag be plainly visible from outside the vehicle.

The State has not provided us with any citation to Federal law, Federal regulations, or legislative history regarding the Federal requirement of the placement of a tag containing the gross vehicle weight rating on the door edge which might indicate the importance and purpose of the weight rating tag. Unlike the VIN, which must be

in a location readable from outside the vehicle for passenger cars manufactured after 1969 pursuant to Federal regulation, there is no similar Federal visibility requirement as to the tag containing the gross vehicle weight rating which has been cited. Our research indicates, however, that a certification tag shall be affixed to the hinge pillar, door-latch post, or door edge that meets the door-latch post, if possible, otherwise in a position that is easily readable without moving any part of the vehicle except an outside door. (49 C.F.R. §567.4(c) (1987).) This tag shall contain, among other things, the gross vehicle weight rating. (49 C.F.R. §571.4(g)(4) (1987).) Such a requirement, however, does not diminish the reasonable expectation of privacy in the tag located on the door edge, a location not ordinarily in plain view. It was precisely the pervasive Federal regulations for the VIN and the requirement that the VIN be readable from outside the vehicle that the Supreme Court found diminished the reasonable expectation of privacy in the VIN. (*Class*, 475 U.S. at 113, 89 L. Ed. 2d at 90, 106 S. Ct. at 964-65.) Those reasons have not been shown by the State to exist for the gross vehicle weight rating tag. We, therefore, hold that defendant had a reasonable expectation of privacy in the certification tag located on the door edge of defendant's Blazer.

As defendant had a reasonable expectation of privacy in the tag located on the door edge of his vehicle, Officer Ronzani's opening of the door to look at the tag constituted a search within the meaning of the fourth amendment. It is necessary, then, to decide whether this warrantless search was constitutionally permissible. In doing so we must determine whether the warrantless search was reasonable. *Class*, 475 U.S. at 116-17, 89 L. Ed. 2d at 92, 106 S. Ct. at 967-68.

■ In determining whether the search in this case was reasonable, it is necessary to balance the need to search against the invasion the search entails. (*Class*, 475 U.S. at 116, 89 L. Ed. 2d at 92, 106 S. Ct. at 967.) Here, the balance tips in favor of defendant. Generally, searches must be conducted pursuant to a warrant backed by probable cause (*Class*, 475 U.S. at 117, 89 L. Ed. 2d at 92, 106 S. Ct. at 967), and any search conducted without a warrant issued upon probable cause is *per se* unreasonable subject only to a few specifically established exceptions. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043.) Here, other than its reliance on *Class*, the State does not argue that any established exception to the warrant requirement justified the search of defendant's door edge or doorjamb.

As the court recognized in *Class*, however, when a search has as its direct objective a weapon, the balance will be struck in favor of

the reasonableness of the search so long as the officer has a reasonable suspicion of criminal activity despite the substantial intrusiveness of the search. (*Class*, 475 U.S. at 117, 89 L. Ed. 2d at 92, 106 S. Ct. at 967-68.) If an officer's safety is less directly served by the search, something more than reasonable suspicion is necessary to justify the intrusion if the balance is to tip in favor of the reasonableness of the search. *Class*, 475 U.S. at 117, 89 L. Ed. 2d at 92, 106 S. Ct. at 968.

■ Here, the opening of the driver's door to look for the gross vehicle weight rating tag did nothing to further the officer's safety. Nor was the intrusion here minimal. Unlike in *Class*, where the object of the search was the VIN, in which the driver had no reasonable expectation of privacy, here Officer Ronzani opened the door for the purpose of examining the tag, in which defendant had a reasonable expectation of privacy. Furthermore, the purpose of the search in this case was to gather evidence by which to prosecute defendant for a traffic violation for which the officer had already charged defendant. Under these circumstances, we hold the search of defendant's door edge and doorjamb, for purposes of examining the gross vehicle weight rating, to be unreasonable.

Because the opening of the door to look for the tag containing the gross vehicle weight rating located on the door edge, which was not visible from outside except by opening the door, constituted a warrantless and otherwise unjustified intrusion into an area for which defendant had a reasonable expectation of privacy, there was a violation of defendant's fourth amendment rights. Suppression of the evidence seized in violation of the fourth amendment was proper, albeit not for the precise reason articulated by the circuit court. In view of our holding on this basis, we need not determine whether the finding by the circuit court, that Officer Ronzani's stated reason for opening the door to determine the gross vehicle weight rating was a pretext to look for marijuana, was manifestly erroneous.

■ The State's last contention is that "the odor of marijuana emanating from a vehicle gives an officer probable cause to conduct a warrantless search of the vehicle," citing *People v. Stout* (1985), 106 Ill. 2d 77, 477 N.E.2d 498. The fallacy of this argument is that Officer Ronzani did not smell marijuana from the vehicle until he had opened the door and peered inside. In contrast, in *Stout* the police officer detected the odor of burning marijuana through an open window in a vehicle while standing near the driver's door. (*Stout*, 106 Ill. 2d at 81, 477 N.E.2d at 499-500.) It is fundamental under the circumstances here that a search cannot be justified by evidence obtained by exploitation of a prior illegal act.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DUNN, J., concurs.

JUSTICE INGLIS, dissenting:

I respectfully dissent. I agree with the majority's conclusion that there is a reasonable expectation of privacy in the tag containing the gross vehicle weight rating (GVWR). However, I believe that the majority opinion should have found that the search was reasonable. Before addressing the reasonableness of the search, the decision of the trial court must first be considered briefly.

Determinations of credibility are within the province of the trial court and will not be disturbed on review unless they are contrary to the manifest weight of the evidence. *People v. Bowen* (1987), 164 Ill. App. 3d 164, 176.

In the instant case, the trial court granted defendant's motion to suppress because it did not believe that the officer opened the door to examine the certification tag. Thus, in making its determination, the trial court looked to the subjective motive of the officer. This was incorrect. "The proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's actions in light of the facts and circumstances before him at the time *without regard to his underlying intent or motivation.*" (Emphasis added.) (*People v. Hoskins* (1984), 101 Ill. 2d 209, 213-14; see also *Scott v. United States* (1978), 436 U.S. 128, 135-38, 56 L. Ed. 2d 168, 176-78, 98 S. Ct. 1717, 1722-23.) Consequently, the validity of the trial court's order should be reviewed without regard to the intent of the officer.

What the constitution forbids is not all searches and seizures but unreasonable searches and seizures. (*Elkins v. United States* (1960), 364 U.S. 206, 222, 4 L. Ed. 2d 1669, 1680, 80 S. Ct. 1437, 1446.) The reasonableness of a search must be determined by balancing the need for the search against the invasion which the search entails. (*Terry v. Ohio* (1968), 392 U.S. 1, 17, 21, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879.) And, although the majority appears to question the propriety of the search absent a warrant, it is well recognized that there are differences between automobiles and other property which permit warrantless searches of automobiles which would not be permitted in other circumstances. *United States v. Chadwick* (1977), 433 U.S. 1, 12, 53 L. Ed. 2d 538, 549, 97 S. Ct. 2476, 2484.

In the instant case, defendant was stopped for illegal bumper height. A determination of the maximum bumper height for any vehicle is based on the GVWR of the vehicle. (See Ill. Rev. Stat. 1985, ch. 95½, par. 12—608.) Thus, a determination of the GVWR is needed to determine if the bumper height exceeds the maximum allowed height and by how much. The GVWR to which the Act refers is found on all vehicles in accordance with Federal regulations. Section 114 of the National Traffic and Motor Vehicle Safety Act of 1966 provides that every motor vehicle shall have permanently affixed to it a label or tag which certifies that the vehicle conforms to all applicable Federal motor vehicle safety standards. (15 U.S.C.A. §1403 (West 1982).) The Code of Federal Regulations further provides that this tag shall contain a gross vehicle weight rating "which shall not be less than the sum of the unloaded vehicle weight, rated cargo load, and 150 pounds times the vehicle's designated seating capacity." (49 C.F.R §567.4(g)(3) (1987).) Determination of the GVWR then is the need for the search.

In determining the intrusiveness of the search it is important to remember, as the majority does, that there is a lesser expectation of privacy in an automobile "because its function is transportation and it seldom serves as one's residence or as the repository of personal effects." (*Cardwell v. Lewis* (1974), 417 U.S. 583, 590, 41 L. Ed. 2d 325, 335, 94 S. Ct. 2464, 2469; see also *Arkansas v. Sanders* (1979), 442 U.S. 753, 761, 61 L. Ed. 2d 235, 243, 99 S. Ct. 2586, 2591 (regulation of automobiles dilutes expectation of privacy).) The intrusion that was required in the instant case was limited in scope and directly related to the automobile's function of transportation. The Code of Federal Regulations proscribes where the tag is to be placed (49 C.F.R. §567.4(c) (1987)) and thus does not require great searching to find. It appears that ordinarily the opening of the vehicle's door and looking at the side of the door or the doorjamb is all that is required. (See 49 C.F.R. §567.4(c) (1987).) Such a search does not require the opening of any compartments, the moving about of any items in the vehicle, or any other type of rooting around inside the vehicle. (See *Class*, 475 U.S. at 118, 89 L. Ed. 2d at 93, 106 S. Ct. at 968 (search for vehicle identification number not overly intrusive).) In short, the intrusion is minimal. Thus, balancing the need for the search against the invasiveness of the search, looking at GVWR subsequent to a stop for improper bumper height is not unreasonable. This conclusion is especially borne out when one considers the alternative for determining the GVWR. To determine the GVWR in absence of the tag would require the emptying and weighing of the vehicle, a determination of the cargo load, and a combining of these figures with 150 pounds mul-

tiplied by the designated seating capacity. (See 49 C.F.R. §567.4(g)(3) (1987).) The emptying and weighing of the vehicle itself would be far more intrusive than a mere opening of the driver's side door of the vehicle.

From a review of the record, it is clear that the officer did open the door and look at the GVWR. While at the open door, the officer saw a small pipe, saw residue in a bowl, and smelled marijuana. Once this had occurred, the officer had probable cause to conduct a search of the entire vehicle. (See *People v. Stout* (1985), 106 Ill. 2d 77, 87 (probable cause to search vehicle existed where officer smelled marijuana).) I therefore dissent.