PD-0517-15

PD-0517-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/7/2015 1:28:00 PM
Accepted 6/10/2015 10:10:32 AM
ABEL ACOSTA
CLERK

# IN THE TEXAS COURT OF CRIMINAL APPEALS

Shane Allen Mikel,
Petitioner

v.

THE STATE OF TEXAS,
Respondent.

From Trial Court Cause Number 1372459 in the 232nd Judicial District
of Harris County, Texas, the Honorable Mary Lou Keel Presiding
And Appellate Court Cause Number 01-14-00277-CR
In the First Court of Appeals, Houston, Texas

Petition for Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

June 10, 2015

ABEL ACOSTA, CLERK

The Law Office of Lori Elaine Laird
Lori E. Laird
State Bar No: 24046260
Emily Foster
State Bar No: 24059768
711 W. Bay Area Blvd., Suite 420
Webster, TX 77598
Tel: (832) 699-1966
Fax: (832) 699-1965
Lori@LoriLaird.com
Attorneys for Petitioner
Shane Allen Mikel

ORAL ARGUMENT REQUESTED

## IDENTITIES OF JUDGE, PARTIES, AND COUNSEL

Trial Court Judge:  The Honorable Mary Lou Keel
232nd Criminal District Court
Harris County, Texas

Defendant:  Shane Allen Mikel

Mikel's trial counsel:  Thomas J. Lewis
1602 Washington Avenue
Houston, Texas 77007

Mikel's appellate counsel:  J. Sidney Crowley
214 Morton St.
Richmond, Texas 77479

Mikel's counsel on Petition for Discretionary Review:  Lori Elaine Laird
Emily Foster
711 W. Bay Area Blvd.
Suite 1420
Webster, Texas 77598

Counsel for the State at trial:  Markay A. Stroud
1201 Franklin
Suite 600
Houston, Texas 77002

Counsel for the State on appeal:  Markay A. Stroud
Devon Anderson
Clinton A. Morgan
1201 Franklin
Suite 600
Houston, Texas 77002

# TABLE OF CONTENTS

Identities of Judge, Parties, and Counsel..................................................ii

Table of Contents ................................................................................ iii

Index of Authorities.............................................................................v

Statement Regarding Oral Argument .....................................................1

Statement of the Case ..........................................................................1

Statement of Procedural History ...........................................................1

References to the Record .......................................................................2

Grounds for Review ..............................................................................2

Argument.............................................................................................2

    Statement of the evidence at trial ......................................................3

    There was insufficient evidence to believe that Mikel was involved in

    the robbery...................................................................................5

      i.  Officer Robles's description of the suspect was so scant that it

    would not have even provided probable cause to arrest a suspect ....6

ii. Officer Robles identification of Mikel was based on a suggestive procedure and unreliable and as such cannot be considered more than a modicum of evidence ............................................................. 10

Prayer for Relief ................................................................. 17

Appendix ........................................................................... 19

# INDEX OF AUTHORITIES

## Cases

*Goldberg v. State*, 95 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2002,

pet. ref'd)................................................................................................7

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) ........................6

*Jackson v. Virginia*, 443 U.S. 307 (1979)..................................................5

*McGruder v. State*, No. 10-07-00348-CR (Tex. App.—Waco Dec. 17,

2008, pet. ref'd) (not designated for publication)..........................7, 12

*Moreno v. State*, 755 S.W.2d 866 (Tex. Crim. App. 1988)........................5

*Neil v. Biggers*, 409 U.S. 188 (1972) .............................................. passim

*People v. Jones*, 429 N.E.2d 1101 (Ill. App. Ct. 1981)..........................7, 8

*State v. Dubose*, 699 N.W.2d 582, 285 Wis.2d 143 (Wis. 2005) .............13

*Weatherly v. State*, No. 04-06-00573-CR (Tex. App.—San Antonio Oct.

31, 2007, pet. ref'd) (not designated for publication).....................11, 12

*Williams v. State*, 243 S.W.3d 787 (Tex. App.—Amarillo 2007, pet. ref'd)

..............................................................................................................13

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument would be helpful in this case as it would help Petitioner clarify how the standards for probable cause or the reliability of a show-up identification relate to his argument that there was insufficient evidence to support his conviction and allow Petitioner to respond to the Court's questions.

## STATEMENT OF THE CASE

This case concerns a conviction for aggravated robbery pursuant to § 29.03(a)(2) of the Texas Penal Code in cause number 1372459 in the 232nd District Court of Harris County, Texas, the Honorable Mary Lou Keel, presiding. (RR: vol. 4, p. 35.) Petitioner Shane Allen Mikel was sentenced to 20 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. (RR: vol. 5, p. 37.) The conviction was appealed to the First Court of Appeals in cause number 01-14-00277-CR.

## STATEMENT OF PROCEDURAL HISTORY

Date of opinion from Court of Appeals:  April 7, 2015

Date of Motion for Rehearing:            None filed

Date of Motion for Rehearing:            N/A

1

## REFERENCES TO THE RECORD

For the purposes of the petition, references to the Reporter's Record will be made as follows: (RR: vol. ___, p. ___), where the blanks refer to the volume number and page number, respectively.

## GROUNDS FOR REVIEW

1. Whether the Court of Appeals has so far departed from the accepted course of judicial proceedings by effectively determining that there is a lower burden of proof for a conviction than there would be to make an arrest.

2. Whether the Court of Appeals has so far departed from the accepted course of judicial proceedings by effectively determining that the identification resulting from a suggestive show-up without indications that Petitioner had not been misidentified constitutes more than a modicum of evidence.

## ARGUMENT

At trial, the State and the Defense agreed that the only issue in this case was the identity of the man in the gray sweater who robbed the Flemingo Supermarket on December 28, 2012. (RR: vol. 4, p. 6-8.) Mikel

argued, at trial and on appeal, that the evidence was insufficient to prove Mikel's involvement beyond a reasonable doubt. Here Mikel argues that the evidence linking him to the robbery is so scant that, in affirming the judgment of the trial court, the Court of Appeals departed from the accepted and usual course of judicial proceedings by effectively holding that there is a lower burden of proof for a conviction than there would be to make an arrest and that an identification from a suggestive show-up constitutes more than a modicum of evidence.

## Statement of the evidence at trial

The only evidence that suggested that Mikel could have been involved in the robbery was his presence in the neighborhood the afternoon of the robbery and the identification by Officer Robles. Briefly, the evidence at trial showed the following:

In the afternoon of December 28, 2012, three masked men robbed the Flemingo Supermarket on the corner of Canal Street and Edgewood Street in Houston, Texas. (RR: vol. 3, p. 21, 30, and 39.) One of the men wore a gray sweater with a red stripe. (RR: vol. 3, p. 71.) The men left the supermarket and stole the truck of Raphael Gonzales. (RR: vol. 3, p. 47.) Officer Jesus Robles chased after the men down North Edgewood Street

until they reached Avenue I, where the men jumped out of the vehicle. (RR: vol. 3, p. 64-66.) At this point, the men were no longer wearing masks. (RR: vol. 3, p. 70.) One of the men—Daniel Edison—stops for Officer Robles, and Officer Robles holds him at gunpoint while the other two men walk off. (RR: vol. 3, p. 70.)

Officer Rojilio Carreon arrived to assist and was told by Officer Robles that one of the men "was wearing a gray sweater and he went that way." (RR: vol. 3, p. 111.) Officer Carreon followed the man's path and located a glove, a mask, and a gray sweater. (RR: vol. 3, p. 113 and 118-19.) He spoke to a resident identified as Mr. Herrero, who stated that he saw a man taking off a gray sweater. (RR: vol. 3, p. 117-18.) He stated that the man was white, had a baby blue T-shirt on under the sweater, and was wearing baggy jeans. (RR: vol. 3, p. 118-20.)

Diana Gutierrez testified that she was in the neighborhood with her family when she saw a white man coming down Avenue H. (RR: vol. 3, p. 130.) She testified that he was wearing a "greenish blueish" shirt and khaki shorts and that he was "scruffy" as though he had not shaved. (RR: vol. 3, p. 131-32.) The man then turned east on Canal Street. (RR: vol. 3, p. 133.)

Officer Richard Trejo was driving on Canal Street when heard a description of a white man in a "blue shirt with brown shorts" being a suspect to the robbery at the Flemingo Supermarket. (RR: vol. 3, p. 140-41.) He stopped a man, Petitioner Mikel, who fit that description and took him into custody. (RR: vol. 3, p. 143-44.) Mikel was then brought to Officer Robles who identified him as the man he saw exiting Gonzales's truck. (RR: vol. 3, p. 88.) Though the area was searched, the pair of jeans that Mikel allegedly shed as he was fleeing was never found. (RR: vol. 3, p. 120.)

**There was insufficient evidence to believe that Mikel was involved in the robbery**

A review for sufficiency of the evidence impinges on a jury's discretion "only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in the original). "[A] verdict must stand unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). In the present case, Mikel argues that the Court of Appeals departed

from the accepted course of judicial proceedings because no rational trier of fact could have found Mikel was involved in the robbery beyond a reasonable doubt.

*i.     Officer Robles's description of the suspect was so scant that it would not have even provided probable cause to arrest a suspect*

While Mikel does not argue here that Officer Trejo did not have probable cause to arrest or even that Mikel was under arrest when stopped by Officer Trejo. Indeed, such an argument in the lower courts may have been futile, as, other than the questionable identification itself, no incriminating evidence was gleaned after Mikel was stopped by Officer Trejo. Rather, Mikel turns to the standard of probable cause only to illustrate the weakness of the evidence against him, thus arguing that the evidence was so weak that it would not even have provided probable cause. Probable cause to arrest a suspect is based on reasonableness. "Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Mikel questions what

is reasonable information to identify a particular person as having committed an offense.

In *Goldberg v. State*, 95 S.W.3d 345, 356 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), a witness "described the assailant as a white male, approximately six feet tall, 18-19 years old, 165 pounds, with short-to-medium sandy blonde hair." The court found this description, among other incriminating evidence, to be adequate to provide officers with probable cause to arrest the suspect. *Id.* at 463.

In *McGruder v. State*, No. 10-07-00348-CR (Tex. App.—Waco Dec. 17, 2008, pet. ref'd) (not designated for publication), a man who had just committed a burglary was described to police by the victim. The victim described the burglar's clothes and general appearance and told police that the burglar was "bleeding profusely" from when the victim had cut the burglar in a struggle. *Id.* That the defendant matched the description and was found with a blood-soaked towel wrapped around his arm gave officers probable cause to believe he was the same man who had committed the burglary. *Id.*

In a case from Illinois, in *People v. Jones*, 429 N.E.2d 1101, 1102-03 (Ill. App. Ct. 1981) a description of a suspect including his race, sex,

and body type, and as well as a description of, coincidentally, the suspect's "gray turtleneck sweater with a red stripe across the chest" allowed police to identify the suspect. The court noted that this information, including the description of the "uniquely patterned sweater," "narrows considerably the population of potential suspects" and gave the officers probable cause to arrest the suspect. *Id.* at 1103-04.

With the exception of the description of the sweater, in the present case, Officer Robles provides no descriptive information that would have narrowed the pool of potential suspects to a degree needed to allow police to believe Mikel was probably the suspect. When asked on the witness stand to describe the person he saw exiting the truck, Officer Robles said only that the man was wearing blue jeans, had a mustache, a beard, "some hair," and was upset. (RR: vol. 3, p. 78.) He did not make note of the man's race. (RR: vol. 3, p. 74 and 78.) He did not provide an estimate of his age, weight, or height. (RR: vol. 3, p. 78.) He could not describe the hair color or give a more descriptive account of the style of mustache and beard. (RR: vol. 3, p. 78.)

By contrast, the State's witness Diana Gutierrez, not a law enforcement officer trained to observe, was better able to describe the

facial hair of the man she saw, describing him as "scruffy," as though he "hadn't shaved," and identifying him as white. (RR: vol. 3, p. 130 and 132.) Perhaps more concerning, Officer Carreon testified that the *only description* Officer Robles gave on the day of the robbery was that the suspect "was wearing a gray sweater and he went that way." (RR: vol. 3, p. 111.) The eventual stop of Mikel by Officer Trejo was thus based on a game of identification Telephone, with each player giving only vague and differing description.

Neither Officer Robles's description of a man going "that way," nor the description heard by Officer Trejo of a man in "blue shirt with brown shorts," nor Mr. Herrero's description of a white man in a blue shirt and baggy jeans are descriptive enough to narrow the pool of potential suspects to allow the officers to even arrest a man fitting any one of those descriptions, let alone find a man guilty of robbery beyond a reasonable doubt. (RR: vol. 3, p. 111, 118-20, and 140-41.) Unlike the gray sweater with a red stripe in *Jones* and here, there is nothing distinctive about a blue T-shirt, even in a mild Houston December. As such, the Court of Appeals departed from the accepted course of judicial proceedings by

effectively placing a lower burden of proof on convictions than there is to arrest.

*ii.    Officer Robles identification of Mikel was based on a suggestive procedure and unreliable and as such cannot be considered more than a modicum of evidence*

Again, Mikel cannot and does not argue here that the identification of him done by Officer Robles should have been excluded for being impermissibly suggestive. Rather, by analogizing to cases where show-up identifications have violated a defendant's due process, Mikel argues that any rational fact finder would have considered the identification by Officer Robles to be so untrustworthy as to amount to only a modicum of evidence of Mikel's involvement in the robbery and is therefore insufficient to support his conviction. *See Moreno*, 755 SW 2d at 867. The Court of Appeals therefore departed from the accepted course of judicial proceedings by affirming Mikel's conviction on only a modicum of evidence.

While one-person show-ups do not per se violate a defendant's due process rights, when they are impermissibly suggestive, a court must ask whether the procedure gave rise to a substantial likelihood of

misidentification. *See Neil v. Biggers*, 409 U.S. 188, 199 (1972). Courts will examine "whether, under the totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* Factors to consider are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. Thus in addition to potentially violating a defendant's due process rights, show-up identifications are often excluded from evidence as courts are concerned that the witness is wrong.

In *Weatherly v. State*, No. 04-06-00573-CR (Tex. App.—San Antonio Oct. 31, 2007, pet. ref'd) (not designated for publication), the appellate court analyzed a show-up where two witnesses identified the assailants. There, both witnesses had opportunities to view the assailants before and during the course of the robbery. *Id.* One witness "passed so close to the men on the sidewalk that they almost touched shoulders." *Id.* The other "was close enough to both participants for them to converse about what he had that was worth stealing, for each man to

reach out and grab one of his pockets, and for one assailant to push the gun into his ribs." *Id.*

Additionally, the descriptions provided by the witnesses in that case were accurate. *Id.* The witnesses described the race of the assailants and their relative heights and ages. *Id.* They described one assailant as being "skinny" and "grungy" with "wild hair" while the other was "real rugged looking." *Id.* The court found that the reliability factors "outweigh[ed] any corrupting influence created by any undue suggestiveness of the identification procedure." *Id.*

*McGruder*, No. 10-07-00348-CR also involved a show-up. There, the victim described him as being "[a] very big man, built across the chest." *Id.* As this was an accurate description of the defendant, the identification was considered more reliable. *Id.*

In the present case, an identification was made by Officer Robles. Though Officer Robles is a police officer and not merely a layperson victim or witness to a crime, factors that show his identification was reliable—or unreliable—are still instructive. The show-up was suggestive, and, when considering the totality of the circumstances

12

surrounding the show-up, one could not conclude Officer Robles's identification was reliable.

Mikel was shown to Officer Robles while Mikel was in the back of a patrol vehicle. (RR: vol. 3, p. 88.) This itself is suggestive but not fatal to the identification. *See generally Williams v. State*, 243 S.W.3d 787 (Tex. App.—Amarillo 2007, pet. ref'd) (considering identification of a suspect from the back of a police vehicle to be suggestive), *and see generally State v. Dubose*, 699 N.W.2d 582, 285 Wis.2d 143, 167 (Wis. 2005) (holding that "[s]howups conducted in police stations, squad cars, or with the suspect in handcuffs that are visible to any witness, all carry with them inferences of guilt, and thus should be considered suggestive.")

Addressing the *Biggers* factors, the first inquiry is the opportunity the witness had to observe the suspect. *Biggers*, 409 U.S. at 199-200. Officer Robles testified that he was able to look at the suspect as he was fleeing from the truck for "about a minute, minute and a half." (RR: vol. 3, p. 98.) During this time, however, Officer Robles is holding Edison on the ground at gunpoint and the suspect is heading away from them. (RR: vol. 3, p. 70-72.) While the suspect turns around a few times to face Officer Robles, he is still headed away from Officer Robles and turning

13

down streets, thus it is unknown how long Officer Robles is able to get a good look the suspect's face. (RR: vol. 3, p. 70, 74, 82, and 102.)

Next, *Biggers* considers the witness's degree of attention to the suspect. *Id.* As stated above, while observing the suspect, the suspect was headed quickly away from Officer Robles. (RR: vol. 3, p. 70-72.) Moreover, while trying to observe the suspect, Officer Robles was also holding Edison at gunpoint. (RR: vol. 3, p. 70-72.) While he alleges that he was able to keep Edison at bay while still tracking the suspect, the description he provides of the suspects may lead one to suspect he was not paying careful attention to the features of the suspect. (RR: vol. 73 and 102.)

When asked at trial to describe the person he saw, he said only that the man was wearing blue jeans, had a mustache, a beard, "some hair," and was upset. (RR: vol. 3, p. 78.) He did not make note of the man's race. (RR: vol. 3, p. 74 and 78.) He did not provide an estimate of his age, weight, or height. (RR: vol. 3, p. 78.) He could not describe the hair color or give a more descriptive account of the mustache and beard. (RR: vol. 3, p. 78.) Additionally, Officer Carreon testified that the *only description* Officer Robles gave on the day of the robbery was that the suspect "was wearing a gray sweater and he went that way." (RR: vol. 3, p. 111.) Officer

14

Robles's lack of any detail that would narrow the pool of potential suspects suggests that he was not able to pay attention to the features of the suspect as he fled and makes it likely that Mikel had been misidentified.

Next, *Biggers* asks about the accuracy of the witness's description. *Id.* On the day of the offense, Officer Robles says only that the suspect "was wearing a gray sweater and he went that way." (RR: vol. 3, p. 111.) While there is an explanation for the change in clothing and there was no evidence to contradict which way the suspect went, Mikel would argue that if this description is accurate, it is not precise. It is not sufficient to instill confidence that Mikel was not misidentified.

Neither is the description Officer Robles gave at trial precise. Again, at trial, Officer Robles testified that the suspect was wearing blue jeans, had a mustache, a beard, "some hair," and was upset. (RR: vol. 3, p. 78.) He does not state the suspect race, age, build, height, hair color, or facial hair style. (RR: vol. 3, p. 78.) This testimony is too general and imprecise to allow a rational trier of fact to be confident that Mikel was not misidentified.

The next *Biggers* factor considers "the level of certainty demonstrated by the witness." *Id.* While Officers Robles does not attach a level of certainly to his identification, he does tell the jury why he is certain the man brought to him is the man he saw fleeing. He says "he had the same angry look," referring to the upset face the suspect had when fleeing. (RR: vol. 3, p. 78 and 88.) Thus apparently Officer Robles confidence that he had identified the right man is based on the fact the fleeing suspect and Mikel shared the same emotion.

Finally, *Biggers* asks after the length of time between the witness's first opportunity to see the suspect and the confrontation. *Id.* Mikel concedes this factor weighs in favor of the State in this case.

When looking at the suggestive identification of Mikel by Officer Robles—a one-person show-up while Mikel sat in the back of a police car—and the lack of indications that would make the identification reliable—that Officer Robles was unable to provide an adequate description of the suspect, that Officer Robles was distracted when looking at the suspect, and that Officer Robles did not have a good opportunity to view the suspect—a rational fact finder must conclude that Officer Robles's identification was not reliable. Notably, the State

did not call Mr. Herrero to testify, the only person who could have confirmed that the man he saw removing the distinctive gray sweater was the one on trial. (RR: vol. 3, p. 117-18.) As Officer Robles's identification was unreliable and the only evidence incriminating Mikel, there was insufficient evidence to convict Mikel of the robbery and the Court of Appeals so far departed from the accepted course of judicial proceedings by affirming Mikel's conviction that was based only on a modicum of unreliable evidence.

## PRAYER FOR RELIEF

Shane Allen Mikel respectfully prays that this Honorable Court grant his Petition for Discretionary Review, reverse his conviction, order a judgment of acquittal, and for all further relief to which he has shown himself justly entitled.

Respectfully submitted,

The Law Office of Lori Elaine Laird
11200 NASA Parkway, Suite 107
Houston, TX 77058
Tel: (832) 699-1966

By: _Lori Elaine Laird_
Lori E. Laird
State Bar No: 24046260
Emily Foster

State Bar No: 24059768
Attorneys for Petitioner
Shane Allen Mikel

## Certificate of Service

I do hereby certify that on this 5th day of May, 2015, a true and correct copy of this Petition for Discretionary Review was served on Counsel for the State Markay A. Stroud, Devon Anderson, and Clinton A. Morgan, 1201 Franklin, Suite 600, Houston, Texas 77002 by electronic service.

*Lori Elaine Laird*
_____
Attorney for Petitioner
Shane Allen Mikel

## CERTIFICATE OF COMPLIANCE

I certify that this response is in compliance with Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure because its relevant portions contain 3,456 words.

_Lori Elaine Laird_
Lori Elaine Laird
Attorney for Petitioner

## APPENDIX

April 7, 2015 Judgment of a Panel of the First Court   Exhibit A
of Appeals, *Shane Allen Mikel v. The State of Texas*,
No. 01-14-00277-CR.

**Opinion issued April 7, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00277-CR

————————————

**SHANE ALLEN MIKEL, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1372459**

---

## MEMORANDUM OPINION

A jury found appellant, Shane Allen Mikel, guilty of the offense of aggravated robbery[1] and assessed his punishment at confinement for twenty years.

---

[1]   *See* TEX. PENAL CODE ANN. § 29.03(a)(2), (b) (Vernon 2011).

In his sole issue, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

The complainant, Inayat Maredia, testified that on December 28, 2012, while he was working alone at his grocery store on Canal Street in Houston, he noticed three men, wearing masks, approaching the store. One of the men, holding a gun, was wearing a gray sweater with a horizontal red stripe and white tennis shoes. And the complainant, through video feeds of the store's security cameras, saw smaller guns in the hands of the other two men. He ducked under the check-out counter and pushed a button to lock his front doors automatically, but a customer held the doors open, which allowed the men to enter before the doors could lock. The doors then closed, locking the men in the store.

The man wearing the gray sweater and white tennis shoes jumped over the counter, went into the store's office, and took a cash box containing $60,000. One of the other men began shooting at the locked door in an effort to open it. Throughout this time, the complainant sat on the floor, afraid that one of the men might shoot or kill him. When the three men left the store and walked into the parking lot, the complainant telephoned for emergency assistance. The store's surveillance videotapes, which were admitted into evidence, show the men

2

entering and exiting the store, the man in the gray sweater and white tennis shoes jumping over the counter, and the subsequent events that occurred in the parking lot.

Raphael Zavala, a regular customer at the complainant's grocery store, testified that he was in his truck outside the store when he heard a loud noise from inside the store. When he exited his truck to investigate, he discovered broken glass at the front of the store. Zavala returned to his truck, where he was accosted by three men wearing ski masks, at least two of whom had guns. When one of the men told Zavala in Spanish, "Give me the keys or I will kill you," he handed over his keys. The same man, holding what Zavala described as a "machine gun," fired a shot into the ground and the masked men then got into Zavala's truck and drove off. Zavala flagged down Houston Police Department ("HPD") Officer J. Robles, who happened to be driving by, and explained what had happened. After Officer Robles told Zavala to stay where he was, he pursued the robbers.

Officer Robles testified that while on patrol near the grocery store on December 28, 2012, he heard multiple gunshots and slowed his patrol car to determine from where the shots were fired. A man then ran up to his patrol car from the grocery store and stated that men were taking his truck and wanted to kill him. As Robles told the man to wait for him, a truck "flew out of the parking lot" of the grocery store at high speed, and the man identified the truck as his. Robles

3

followed the truck down Canal Street and North Edgewood Street until it crossed over Avenue I, at which point three men began "hopping out" without stopping the truck, which eventually collided with a parked vehicle. Robles then drew his gun and commanded the men to "get down." One man complied, but the others did not. And one of the men who refused to stop was wearing "a gray sweater with a red line in the center," which Robles identified as in evidence, and dark blue jeans. When Robles was within a few yards of this man, he saw his face clearly, but lost eye contact with him at the corner of Avenue I and Engle Street.

Officer Robles then described the fleeing suspects over the radio in his patrol car. When he searched the truck, he found an AK-47 rifle that contained a magazine loaded with eleven live rounds of ammunition. The man that Robles detained, Daniel Edison, admitted that the gun was his. After another officer detained appellant and brought him to Robles, Robles identified him as the man he had seen wearing the gray sweater, and he identified him in court for the jury. The third man who had been in the truck was never apprehended or identified.

HPD Officer R. Carreon testified that when he arrived at Officer Robles's location, he found a mask and a glove. He then spoke with a witness, Herrero, who stated that he had just seen a white man take off and discard a gray sweater, and then run away. Herrero also told Carreon that the man was wearing baggy

4

jeans and a baby blue t-shirt. Carreon then found in a ditch on Engle the gray sweater, which he identified in evidence.

Diana Gutierrez testified that on December 28, 2012, she and her father had stopped in their car at the corner of Canal and Lenox, where they saw police activity. She saw a white man wearing long khaki shorts, "bright white" tennis shoes, and a "greenish bluish short sleeve shirt," walking quickly. The man and his attire struck Gutierrez as unusual because "everybody in that neighborhood is basically Hispanic," and "[i]t was cold so [the man's clothing] was just kind of awkward." And she noted that the man had "real short" and "kind of scruffy" hair. Gutierrez then identified appellant in court as the man that she had seen.

Former HPD Officer R. Trejo[2] testified that on December 28, 2012, he assisted in the search for suspects in the robbery. Over the radio in his patrol car, he heard a description of a suspect as a white male wearing a blue shirt with brown, khaki shorts. He then saw, walking along Canal Street, a man matching the description, sweating, flushed, and red in the face. Trejo detained the man, and he identified appellant in court as the man that he had detained. Other officers took the man back to Officer Robles, who identified him at the scene as the same person that he had seen wearing the gray sweater with a red stripe "just minutes before."

---

[2]    Officer Trejo retired before trial.

Courtney Price testified that she met appellant at the home of a mutual friend, Kate, in Houston the night before the robbery. She noted that appellant, who was wearing blue jeans and a t-shirt at the time, had used methamphetamine with her throughout the night before the robbery and into the next morning, until about noon. Price, Kate, and appellant then left in Kate's car, and Kate and Price stopped several times on the street to ask people for narcotics. Price explained that appellant, who was high on methamphetamine, then "freaked out" because he "didn't want to be there. It made him paranoid." He left Price and Kate at around 12:30 or 12:45 p.m.

Appellant testified that he has had "a problem with drugs off and on most of [his] life." He further testified, consistent with Price, that he had used narcotics throughout the night before the robbery at an apartment in Houston. Around noon on the day of the robbery, just a few minutes after he exited Kate's car, a police officer confronted and arrested him. Appellant denied participating in the robbery, being present at the complainant's grocery store, or having a gun in his possession on the date of the robbery.

**Standard of Review**

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a

6

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S. W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

## Sufficiency of the Evidence

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction because neither the complainant nor Zavala saw the robbers' faces; Zavala did not observe the robbery and "did not positively [identify] the men who robbed his truck as the same ones who had robbed the . . . store"; Officer Robles's "chance for observation was fleeting"; appellant, when detained, was not wearing the same clothes described by Robles; and appellant was not carrying cash from the robbery or a weapon when he was detained. He asserts that given these facts, combined with the testimony given by him and Price, "no rational trier of

fact could have found beyond a reasonable doubt that [he] participated in the robbery of the complainant's store."

A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2014). He commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a) (Vernon 2011). The robbery is aggravated if he does any of the following three things:

(1)    causes serious bodily injury to another;

(2)    uses or exhibits a deadly weapon; or

(3)    causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:

    (A)    65 years of age or older; or

    (B)    a disabled person.

*Id.* § 29.03(a) (Vernon 2011).

In this case, the testimony of the complainant and the videotape from surveillance cameras in his store establish that on December 28, 2012 three men, each carrying a gun and wearing a mask, entered and robbed the complainant's

8

store, placing the complainant in fear of imminent bodily injury or death. The videotape shows that the man who took the cash box wore a gray sweater with a horizontal red stripe. It also shows that one of the men fired shots at the store's door in an effort to open it to exit the store after the door had locked. The testimony of Zavala and the videotape further show that the same men then stole Zavala's truck outside of the store, and one of the men fired a shot from his gun.

Moreover, both Zavala and Officer Robles testified that Zavala identified the truck for Robles, who immediately pursued the truck. And, Robles later saw three men exit the truck, one of whom, Edison, admitted to owning the rifle found in the truck and participating in the robbery. Robles got a clear look at the face of one of the other men, who had been in the truck and was wearing a gray sweater with a horizontal red stripe. After Robles had described the fleeing suspect over his radio, an eyewitness told Officer Carreon that he had just seen a white man, who was wearing a gray sweater, jeans, and a light blue shirt, remove his sweater. After Carreon recovered the sweater, Gutierrez saw a man in the same area matching the description that Robles had given earlier, except he was wearing khaki shorts. Officer Trejo then detained appellant, and Robles later identified appellant as the man who he had seen in Zavala's truck and who had been wearing a gray sweater with a red stripe. And Robles, Trejo, Gutierrez each identified appellant as the man that they had seen on December 28, 2012.

Given the above evidence, the jury could have reasonably concluded that the men who robbed the complainant's store were the same men who stole Zavala's truck and who later exited the truck in sight of Officer Robles. The jury could have further reasonably concluded, based on Robles's positive identification of appellant as one of the men he saw exit the truck, that appellant was one of the robbers. This conclusion is further supported by Officer Carreon's testimony that he found a mask and Herrero had told him that he had just seen a man in the same area removing a sweater with a red stripe, revealing a baby-blue t-shirt. Moreover, Gutierrez placed appellant in the same area as the suspect, and Officer Trejo testified that he detained appellant in the area and he was wearing clothes matching the description given to him by Gutierrez and Herrero. "[T]he jury was free to take all of the evidence into account and to believe or disbelieve any portion of [the defendant's] statements." *Sorto v. State*, 173 S.W.3d 469, 475 (Tex. Crim. App. 2005). It was thus free to reject both appellant's and Price's testimony.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably found, beyond a reasonable doubt, that appellant committed a robbery of the complainant's grocery store and, in the process of committing the robbery, used and exhibited a firearm, a deadly weapon, placing the complainant in fear of imminent bodily injury or death. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

10

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

Mrs. Laird,

Let me start by saying it's an honor to have you for a lawyer. This whole situation has been a nightmare up to this point, you're my first bit of light at the end of the tunnel. You're truely a blessing, and a God-send. I'm sure you've looked at my record by now, so I wont try to hide the fact that from 96'-02' I was an "idiot", and I got in alot of trouble. I spent time in county, and state jail, all for drugs, and theft. I got out in 04', and started a company, got married, had kids, etc... I even taught sunday school, worked in youth ministry, and the soup kitchen with "the freedom house"; from 08'-14'; off + on. If you take a good look at my record there is nothing with a weapon, ever, I don't like guns, never have. I feel like my past should help me here, this crime does not fit my M.O.; I ___ed to get my, Lewis to point this out in court, he refused. I had cops, preachers, and city counsel members all willing to testify as to my character, but Lewis wasn't trying to hear it. He did absolutely nothing at all to help me, he let the state get away with alot of stuff that I know is illegal, but when I'd say something, or ask him to bring stuff up, or object, he got mad at me, alot, told me to be quiet, that he knew what he was doing. I know I was court appointed to him, but he's still suppose to at least

try to represent me, isn't he? He had DNA, and finger print evidence that excluded me from a match, and he never showed the jury. He had several statements from people that described a much shorter, lighter weight man, + he didn't call them as witnesses. The police lost the dash cam video of the scene, and he didn't bring that up. They refused me a photo spread, or a lineup for a year and a half, he told me "noone can identify you". Then in my trial he let 2 people claim to have seen me, and he didn't object. One was the cop who lost the video, and one was the girl who they led/baited with my photo, only my photo, and she admitted it in court. The guy they caught in the stolen truck with a gun from the crime told them he didn't know me, and Mr. Lewis told me at one point that he would make a statement, and testify if necessary, but he didn't call him as a witness. Then they brought the gun he had to my trial, I had no connection to that gun at all, but Lewis didn't object. He had the clothes, and shoes I was arrested in, I asked him to show the jury, because they didn't match the video, or statements of what the suspect had on, but he never showed the jury or even brought it up. I truely feel like he either made a deal with, or did a favor for the D.A., by throwing my case. He told me that they had been good friends for over 5 yrs, and the...

was her first criminal case ever, that she had recently come from "paper/cyber crimes". This was my first time ever being in Harris County, or dealing with them, but I know how corrupt they are, I just never felt I would ever deal with it first hand. I sat in County for 10 months and every court date I asked him (Lewis) to get me a bond reduction, he refused, he told me that "they're not gonna give you one." but he never tried. If you'll look into it you'll see that I personally filed all kinds of motions on my own behalf, because I knew he didn't care, and didn't have my best interest at heart, he made it very obvious he didn't care, and got annoyed when I asked him to do his job. I felt very confident going to trial, even with him, because they have no evidence at all. I had no money, no weapon, no clothes, shoes, or anything else to link me to this crime or my possesion. They have no prints, DNA, video, line-up, nothing, I even had an aliby, she told them I had been with her, and when + where I got out of her car; I was like 9 blocks from the scene when I was stopped, I was walking down the street, I didn't run, or resist in any way. The cop had no idea who he was even looking for, but when he ran my name he got all happy. All my prior convictions are from 13-19 yrs.

ago, how can they still use that against me? Will you help me file the necessary paperwork to the right people, I want Mr. Lewis exposed, and disbarred for what he did to me, he has an obligation to do his job, even for court appointed cases, he shouldn't get away with this, I've already lost 2 yrs. of my life behind this situation, I have a mother, and 3 daughters who need me home. I really need you to go above and beyond on this one, please, you're all I've got, my Ace in the hole. This is a good opportunity to expose crooked lawyers, cops, + D.A.'s. I even got a letter in the mail a few months ago that said the guy who handled my evidence had been charged with ~~faci~~ falsifying documents, + other crimes. Please stay in contact with me. I also give you permission to share any and all aspects of my case with my mother. Thank You

sincerely, Shane M

my Info

Shane Mikel #1916785
4304 Hwy 202
Beeville, TX. 78102

Mrs. Laird,

I pray this letter finds you in the best of health and spirits. I was curious if you got my last letter that I sent to your old adress? I had 4 pages of very important information vital to my case. I also believe my mother sent you a few pages of stuff too, I hope they were helpful. I was very upset to hear that mr. Crowley (my court appointed appeal lawyer) has already filed an appeal, because he did so without ever contacting me, or even trying to get all the facts, so theres no doubt in my mind that he rushed it, and did the bare minimum to get paid. If he went solely by the transcripts, theres alot he has no idea about. I really wish you would file an ammendment, and add all that you want to it instead of piggy backing on his joke of an appeal. You know as well as I do that simply waiting for his to be denied, then filing your own at the next level will drag this out for another year, and I don't want that. We both know there's more than enough descrepancies in my case to get a re-trial, and win it, I won't go into all the details again, but I was completely railroaded based on my record, they had no physical evidence whatsoever linking me to this

crime. Theyie best weapon was my lawyer, he hung me out to dry, and fed me to his friend (the D.A.) I want to pursue having him charged, disbarred, or whatever I can do, he put absolutely no effort at all into my defense, and failed to show alot of evidence that proved it wasn't me. Please do all you can to speed this process up, I have 3 girls out there who need me. It may not seem like much to you, but we gave you alot of money, we had to sell the land we had lived on for over 20 yrs. to be able to hire you. I know mom would never tell you that, but I will. She only has a $700 a month, partial retirement, and has been struggling to raise my girls too, that land was all we had. Before we sold it she couldn't ever come see me unless she rented a car, because hers leaked water, and she couldn't afford to fix it. Please go above and beyond in this case, and get me home soon. Please send me a response so I at least know you got my letters. Thank You, and God Bless You!

sincerely, Shane A.